# EXHIBIT 2

# ASSIGNMENT NOTICE

CHI02_60668469v1
84396992_1

# LEHMAN BROTHERS

RECEIVED

JUN 3 0 2009

DEPT. OF TREASURY
BOARD OF EDUCATION

June 29, 2009

To: The Counterparty or Counterparties to which this Assignment Notice is applicable:

Board of Education of the City of Chicago

**Re:** **In re Lehman Brothers Holdings Inc., *et al.*, Chapter 11
Case No. 08-13555 (JMP) (jointly administered)**

Ladies and Gentlemen:

Reference is hereby made to that certain Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption or Assignment of Prepetition Derivative Contracts (the "Order"), which Order was entered in the above-referenced cases on December 16, 2008 and a copy of which is enclosed herewith. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Order. This communications is the Assignment Notice to which you are entitled under the terms of the Order.

Pursuant to the Order:

a. Annex A hereto sets forth the names and addresses of the Counterparty or Counterparties, in alphabetical order, to whom this Assignment Notice is applicable;

b. Annex B hereto sets forth the Derivative Contracts to which this Assignment Notice is applicable, and includes a list of all transactions ("Transactions") thereunder and specifies which if any among such transactions are Fully Paid Contracts;

c. Annex C hereto sets forth the proposed Assignees or, if applicable, any guarantor(s) therefor and the rating(s) applicable thereto; and

d. Annex D hereto sets forth the Cure Amounts identified by the undersigned Debtors, including any collateral or value as of the business day prior to delivery of this Assignment Notice.

Also included with this Assignment Notice are copies of the Order and selected financial information concerning each assignee's or guarantor's ability to perform under an assigned Derivative Contract.

This Assignment Notice applies to fewer than 100 Transactions (and fewer than 50 Fully Paid Contracts). Accordingly, kindly note that the applicable Objection Period is ten (10) business days from delivery of this Assignment Notice. The Order provides details as to the procedure and grounds upon which objections to this Assignment Notice may be made.

The undersigned Debtors will, within five (5) business days after consummation of an assignment transaction, provide notice to you of the effective date of such assignment, any Cure Amount that has been paid and the identity and contact information of the assignee and its guarantor, if applicable. Such notice shall be accompanied by an instrument signed by the assignee and pursuant to which the assignee assumes all obligations under the assigned Derivative Contract(s), and a copy of the executed guarantee, if any, of the assignees obligations under the applicable Derivative Contract.

For additional information and questions, kindly contact Locke McMurray at the below address or on 212-526-7186.

Very truly yours,


LEHMAN BROTHERS SPECIAL FINANCING INC.
LEHMAN BROTHERS HOLDINGS INC.


cc:     Weil, Gotschal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153-0119
        Attn: Lori R. Fife; Robert J. Lemons

        Curtis, Mallet-Prevost, Colt & Mosle LLP
        101 Park Avenue
        New York, New York 10178
        Attn: Steven J. Reisman; L.P. Harrison 3rd

        Milbank, Tweed, Hadley & McCloy LLP
        One Chase Manhattan Plaza
        New York, New York 10005
        Attn: Wilber Foster; Evan Fleck

## COUNTERPARTY OR COUNTERPARTIES

### Board of Education of the City of Chicago

Board of Education of the City of Chicago
125 South Clark Street, 13th Floor
Chicago, IL 60603
Attn: Treasurer
Telephone: (773) 553-2790
Facsimile: (773) 553-2791

Board of Education of the City of Chicago
1819 West Pershing Road
Chicago, IL 60609
Attn: Joe Fitzpatrick

Copy to:

Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illiniois 60661-3693
Attn: Renée M. Friedman, Esq.
Telephone: (312) 902-5422
Facsimile: (312) 577-8959

**ANNEX B**

**[Identification of Derivative Contracts]**

## BOARD OF EDUCATION OF THE CITY OF CHICAGO

ISDA Master Agreement dated as of December 3, 2003 between Lehman Brothers Special Financing Inc. and Board of Education of the City of Chicago, as amended, supplemented or otherwise modified from time to time.

Transactions:

| Confirmation Reference Number | Trade Type | Effective Date | Maturity Date | Notional (USD) | Fixed Rate Payer | Floating Rate Payer | Fixed Rate (%) | Floating Rate Index | Floating Rate Spread (BP) | Check if Fully Paid Contract |
|---|---|---|---|---|---|---|---|---|---|---|
| 607923L | Rate Swap | 12/12/2003 | 3/1/2034 | 95,350,000 (amortizing) | Board | LBSF | 3.771 | 70% of LIBOR1M | | |

# ANNEX C
## [Identification of Assignees and/or Guarantors]

| ASSIGNEE OR GUARANTOR (IF APPLICABLE) | RATINGS | | |
|---|---|---|---|
| | STANDARD & POOR'S | MOODY'S | FITCH |
| The Goldman Sachs Group, Inc. http://idea.sec.gov/Archives/edgar/data/8869 82/000095012308012298/y71546e10vq.htm | A | A1 | A+ |
| JPMorgan Chase & Co. http://idea.sec.gov/Archives/edgar/data/1961 7/000095012308014621/y72204e10vq.htm | A+ | Aa3 | AA- |
| Morgan Stanley http://idea.sec.gov/Archives/edgar/data/8954 21/000119312508208512/d10q.htm | A | A2 | A |
| Barclays PLC http://www.investorrelations.barclays.co.uk/ BRC1/jsp/brccontrol?task=articleFWgroup& site=inv&value=1169&menu=395 | A+ | A1 | AA- |
| Citigroup Inc. http://idea.sec.gov/Archives/edgar/data/8310 01/000104746908011506/a2188770z10-q.htm | A | A2 | A+ |
| ING Group http://www.ing.com/group/showdoc.jsp?doci d=075330_EN&menopt=ivr|sec | A+ | A1 | A+ |
| Bank of America Corporation http://idea.sec.gov/Archives/edgar/data/7085 8/000119312508228086/d10q.htm | A+ | A1 | A+ |
| Wachovia Bank, National Association https://www.wachovia.com/foundation/v/ind ex.jsp?vgnextoid=ce8a5ef43a0aa110VgnVC M1000004b0d1872RCRD | AA+ | Aa2 | AA+ |
| Credit Suisse Group http://www.credit-suisse.com/investors/en/index.jsp | A | Aa2 | AA- |
| Deutsche Bank AG http://www.db.com/ir/index_e.htm | A+ | Aa1 | AA- |
| Bank of Nova Scotia http://www.scotiabank.com/cda/content/0,16 08,CID7148_LIDen,00.html | AA- | Aa1 | AA- |
| BNP Paribas www.bnpparibas.com | AA | Aa1 | - |

# ANNEX D
## [Cure Amounts]

| Payment Due In Connection With Transactions | Amount Due (USD) | Date Due |
|---|---|---|
| 607923L | ($155,755.81) | 10/1/2008 |
| 607923L | ($224,659.38) | 11/3/2008 |
| 607923L | ($101,533.45) | 12/1/2008 |
| 607923L | ($65,637.11) | 1/2/2009 |
| 607923L | ($22,166.41) | 2/2/2009 |
| 607923L | $1,774,377.47 | 3/2/2009 |
| 607923L | ($30,359.86) | 4/1/2009 |
| 607923L | ($25,659.48) | 5/1/2009 |
| 607923L | ($20,609.66) | 6/1/2009 |
| Total: | 1,127,996.31 | |

Positive values reflect payments due to Lehman Brothers and negative values reflect payments due to Counterparty. As a result of the foregoing, Lehman Brothers is not obligated to satisfy a Cure Amount and the Counterparty will be obligated to pay the Assignee the "Total" set forth above with interest as provided in the Master Agreement identified in Annex B hereto.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――x
                                                      :
In re                                                 :        **Chapter 11 Case No.**
                                                      :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,              :        **08-13555 (JMP)**
                                                      :
                                    Debtors.          :        **(Jointly Administered)**
                                                      :
―――――――――――――――――――――x

## ORDER PURSUANT TO SECTIONS 105 AND 365
## OF THE BANKRUPTCY CODE TO ESTABLISH
## PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION
## AND ASSIGNMENT OF PREPETITION DERIVATIVE CONTRACTS

Upon the motion, dated November 13, 2008 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-

debtor affiliates, "Lehman"),[1] pursuant to sections 105 and 365 of the Bankruptcy Code (the

"Bankruptcy Code") and Rules 6006 and 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") for entry of an order establishing procedures for the assumption and

assignment (the "Assumption and Assignment Procedures") of derivative contracts (the

"Derivative Contracts")[2] the Debtors entered into with various counterparties (the

"Counterparties") and the settlement of claims arising from the termination of Derivative

Contracts (the "Termination and Settlement Procedures" and together with the Assumption and

Assignment Procedures, the "Procedures"), all as more fully described in the Motion; and the

---

[1]     The Debtors do not include Lehman Brothers Inc. ("LBI") or any affiliates of LBHI that are not chapter 11 debtors.

[2]     For the avoidance of doubt, Derivative Contracts shall not include contracts or assets transferred to Barclays Capital Inc. or its affiliates pursuant to the terms of that certain Asset Purchase Agreement dated September 16, 2008 (as amended, supplemented, modified or clarified) among LBHI, LBI, LB 745 LLC, and Barclays Capital Inc.

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

. a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the order entered September 22, 2008

governing case management and administrative procedures [Docket No. 285] to (i) the United

States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) the attorneys for

the Official Creditors' Committee (the "Committee"); (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all Counterparties (via mail, fax, or email) in the Debtors' records

to the extent that the Counterparties' last known mail address, fax number, or email address is

available to the Debtors; and (vii) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and all objections to the Motion,

other than those filed by the Remaining Objectors (as defined below), having been resolved,

withdrawn or overruled at the Hearing; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the Motion is granted; and it is further

ORDERED that the following Assumption and Assignment Procedures for the

assumption and assignment pursuant to sections 105 and 365 of the Bankruptcy Code of

Derivative Contracts that have not been validly terminated are hereby approved and established

in the Debtors' chapter 11 cases:

Assumption and Assignment Procedures

a. For any Derivative Contract to be assumed and assigned pursuant to these Assumption and Assignment Procedures, and without the prior consent of the Counterparty, the Debtors shall, at least ten (10) business days in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts, as defined below); and at least 20 business days in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (or in any case such shorter period as may be agreed by the Counterparty) before such assumption and assignment, deliver a notice (the "Assignment Notice") by overnight mail delivery service, fax, or email (where available) on (i) the Counterparty under each applicable Derivative Contract (and in either case, its attorney, if known; or if it has appeared in these cases), at the last known mail address, fax number, or email address available to the Debtors, and, if different, any mail address, fax number, or email address required by the applicable Derivative Contract; and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck).

b. Each Assignment Notice shall set forth the following information: (i) the names and addresses of the Counterparties, in alphabetical order, (ii) identification of the Derivative Contracts, including a list of all transactions thereunder, and whether any are Fully Paid Contracts, (iii) the identity of as many as 12 proposed assignees, together with any guarantor (provided that the Assignment Notice need not identify the assignee if it will be an affiliate of the guarantor and organized under the laws of the same country as the guarantor) and information regarding each assignee's or guarantor's ability to perform under an assigned Derivative Contract, and (iv) any amounts proposed by the Debtors to be paid to cure existing defaults and compensate for actual pecuniary losses resulting from such default as required under Bankruptcy Code section 365 ("Cure Amounts") (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such Cure Amount). All Assignment Notices will be accompanied by a copy of the Order granting this Motion.

3

c.    Any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code if the assignee, after the Debtors' payment of any Cure Amounts and by assignment, could no longer have any ongoing payment or delivery obligations for the full term of the Derivative Contract and could not have such obligations upon termination (a "Fully Paid Contract").

d.    With respect to Derivative Contracts that may require the return of posted collateral as part of a Cure Amount, the Debtors will either return such collateral or, if such collateral is no longer in the Debtors' possession, the Debtors will pay an amount equal to the value of such collateral as of the business day prior to delivery of the Assignment Notice based upon independent third-party pricing services, which payment will be considered in full satisfaction of the posted collateral. The Debtors' proposed manner of returning any such collateral, including any amount proposed to be paid for collateral no longer in the Debtors' possession, shall be included in the Assignment Notice as a Cure Amount.

e.    To the extent that any Counterparty wishes to object on the grounds of (i) the proposed Cure Amount (including on the grounds of disagreement with any amount proposed to be paid for the value of any collateral no longer in the Debtors' possession); (ii) the need to cure a default or early termination event, including, without limitation, any default or early termination event with respect to the Debtors and each of their respective affiliates, successors and assigns (a "Default") – other than a Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors, which Defaults need not be cured prior to assignment; (iii) the adequate assurance of future performance under the applicable Derivative Contract (unless, after the Debtors' payment of any Cure Amounts and the assignment, the assignee could no longer have any ongoing payment or delivery obligations for the full term of the Derivative Contract, and could not have such obligations upon termination); (iv) an allegedly valid termination of the applicable Derivative Contract; or (v) the identity of the assignee or, if applicable, the guarantor (including, without limitation, that the assignment would give rise to the right to terminate by the assignee or impose additional obligations on the Counterparty), then such Counterparty must deliver a written objection, so that such objection is <u>actually received</u> no later than ten (10) business days after the date of delivery of the Assignment Notice in the case of Derivative Contracts consisting of fewer than 100 transactions (and fewer than 50 transactions in respect of Fully Paid Contracts); and no later than 20 business days after the date of delivery of the Assignment Notice in the case of Derivative Contracts consisting of 100 or more transactions (or 50 or more transactions in respect of Fully Paid Contracts) (the "Objection Period"), on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert

J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L. P. Harrison 3rd); and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck). Any such objection must specify the grounds for such objection, including, without limitation, (i) stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the Counterparty disagrees with the Debtors' proposed Cure Amount, (ii) any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Derivative Contract (including any the Counterparty alleges cannot be cured, other than any Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors), (iii) any allegedly valid termination of the Applicable Derivative Contract that the Counterparty asserts to have occurred (including details and documentation in support of such allegedly valid termination), and /or (iv) the identity of any assignee or, if applicable, the guarantor to whom the Counterparty objects and the grounds for such objection.

f.    To the extent that any Counterparty does not timely deliver an objection as set forth above, such Counterparty will be deemed (i) to have consented to such Cure Amounts, if any, and to the assumption and assignment of the Derivative Contract; (ii) to have agreed that the assignee has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) to have agreed that all Defaults under the Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that neither the assignee nor the Debtors shall have any liability or obligation with respect to any Default occurring or continuing prior to the assignment, and from and after the date of the assignment the Derivative Contract shall remain in full force and effect for the benefit of the assignee and the Counterparty in accordance with its terms; (iv) to have agreed that the terms of this Order shall apply to the assignment; and (v) to have waived any right to terminate the Derivative Contract or designate an early termination date under the applicable Derivative Contract as a result of any Default that occurred and/or was continuing prior to the assignment, provided, however, that nothing in these Assumption and Assignment Procedures shall affect any right of any Counterparty, regardless of whether or not an objection is timely delivered by such Counterparty, to exercise any rights described in Sections 362, 555, 556, 559, 560, 561, or 562 of the Bankruptcy Code prior to consummation of an assignment transaction.

5

g.    If the Debtors are unable to consensually resolve any timely delivered objection, the Debtors may consummate the proposed assignment pursuant to these Assumption and Assignment Procedures only if (i) they seek and obtain authorization of the Court to consummate the proposed assignment, or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, the Debtors pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon (at the rate provided in the applicable Derivative Contract) to which the Court finds, or the Debtors and Counterparty agree, it is entitled. Any effort by the Debtors to seek Court authorization shall be subject, with respect to procedural matters, to all applicable Federal Rules of Bankruptcy Procedure, Federal Rules of Evidence, and Local Bankruptcy Rules for the Southern District of New York.

h.    Unless the Debtors solicit bids from at least four (4) potential assignees and select the highest or best bid received within a reasonable time period from such assignees, the Debtors shall request consent of the Committee through its advisors to assume and assign a Derivative Contract pursuant to these Assumption and Assignment Procedures.

i.    If (i) no objection is timely delivered by a Counterparty, or a Counterparty affirmatively consents to the assignment (including by resolving its objection), and any required Committee consent (including through its advisors) has been received, (ii) the dispute relates solely to the amount of the Cure Amount, the Debtors have complied with the terms of subparagraph g.(ii) of these Assumption and Assignment Procedures, and any required Committee consent (including through its advisors) has been received, or (iii) the Court authorizes the assignment, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice, and, upon such assumption and assignment, the assignee and any guarantor shall assume the Derivative Contract with all Defaults having been deemed cured or waived, and the assigning Debtor shall have no more claims against the Counterparty under the assigned Derivative Contract, provided, however, that any defenses and counterclaims of such Debtor relating to claims of the Counterparties that survive the assignment shall be preserved; and provided, further, that if a Derivative Contract is not assumed and assigned within 60 days (or such longer period as may be ordered by the Court) following the Objection Period, the Debtors' authority to assume and assign the applicable Derivative Contract shall expire, without prejudice to the Debtors' right to renew such authority by serving additional Assignment Notices for the same Derivative Contract(s) pursuant to these Assumption and Assignment Procedures.

j.    Within five (5) business days after consummation of an assignment transaction, the Debtors will provide notice to any Counterparty of the effective date of the assignment, any Cure Amount that has been paid, and the identity and contact information of the assignee and its guarantor, if any. Such notice shall be accompanied by an instrument signed by the assignee and pursuant to which the assignee assumes all obligations under the assigned Derivative Contract(s), and a copy of the executed guarantee, if any, of the assignee's obligations under the Derivative Contract. Any purported termination notice sent by a Counterparty of a Derivative Contract based on a Default occurring prior to the assignment shall be ineffective unless a termination notice is received by the Debtors pursuant to the terms of the Derivative Contract prior to the assignment's consummation. Within ten (10) business days after receipt of the notice of the assignment's consummation, a Counterparty may object by sending a written objection by the means and to the parties specified in subparagraph e., above, on the grounds that the Cure Amount that was paid was insufficient to cure any defaults that occurred and/or pay any amounts accruing between the date of delivery of the Assignment Notice and the assignment. No such objection will affect the validity or terms of the assignment, but the objecting Counterparty shall have a claim with administrative expense priority against the assigning Debtor for any additional Cure Amount that the Debtors agree is due or the Court determines is owed to the Counterparty, and the Debtors shall pay such additional amount within five (5) business days of the Debtors' agreement that the amount is due or entry of a final order by the Court determining that the amount is due. In addition, any rights of a Counterparty to setoff in respect of the assigned Derivative Contract shall be preserved and such rights shall attach to the proceeds of the assignment (with all rights of the Counterparty reserved to dispute any allocation of value to its Derivative Contract if such contract was assigned as part of an assignment of multiple Derivative Contracts) (provided, however, that no rights of setoff arising from agreements with any of the Debtors other than such Derivative Contracts or arising from other matters with respect to any of the Debtors may be asserted against the assignee). Notwithstanding anything in this Order or any agreements between the applicable Debtor and its assignee to the contrary, the applicable Counterparty shall have no obligations under the assigned Derivative Contract to make any payments to the assignee of any amounts paid by the Counterparty to the Debtor pursuant to the terms of the Derivative Contract between the consummation of the assignment and the delivery of the notice of consummation to the Counterparty.

k.    In any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may only assume and assign the master agreement and all transactions entered into under the master agreement, whether terminated or continuing, to a single assignee pursuant to these Assumption and Assignment Procedures. The Debtors shall not be authorized to assume a Derivative Contract pursuant to these Assumption

and Assignment Procedures unless the Debtors simultaneously assign such Derivative Contract pursuant to these Assumption and Assignment Procedures.

l.    As part of and/or to facilitate any assignment transaction the Debtors may agree to make payments, including to or for the benefit of the assignee.

m.    For the avoidance of doubt, these Assumption and Assignment Procedures shall not apply to Derivatives Contracts that have been validly terminated.

n.    Nothing herein shall permit the Debtors to use identifiable collateral posted by third parties or identifiable proceeds of such collateral to pay Cure Amounts pursuant to the terms hereof.

o.    Nothing herein shall preclude any Counterparty from submitting to the Debtors a bid to become the assignee of any Debtor's rights under a Derivative Contract between such Counterparty and such Debtor.

; and it is further

ORDERED that the following Termination and Settlement Procedures for the termination and settlement of claims of terminated Derivative Contracts by the Debtors are hereby approved and established:

a.    With respect to any Derivative Contract, the Debtors may enter into and consummate a termination agreement with the Counterparty to such Derivative Contract, which may include any of the features described below.

b.    A termination agreement may resolve and fix amounts owing between the Debtors and the Counterparty (including by allowing claims against the applicable Debtors), and such amounts may incorporate setoff or recoupment solely to the extent that such setoff or recoupment is legally valid.

c.    In connection with any termination agreement, the Debtors are authorized, but not required, to provide a release to the Counterparty to the extent that the Debtors determine such a release is appropriate.

d.    A termination agreement may address and permit the collateral or margin held by the Debtors or by the Counterparties to be liquidated or returned in accordance with the Derivative Contract, an applicable Master Netting Agreement, or the termination agreement.

e.    Nothing in these Termination and Settlement Procedures shall supersede, suspend, or otherwise modify (i) the legal and contractual rights of any

Counterparties to the extent such legal and contractual rights are enforceable in the Debtors' cases under the Bankruptcy Code or other applicable law; and (ii) the commencement or continuation of any civil proceeding by any party to a terminated Derivative Contract including, without limitation, any such adversary proceeding commenced or pending in this Court. In addition, nothing in these Termination and Settlement Procedures shall require a Counterparty to enter into any termination agreement.

; and it is further

ORDERED that the Debtors are authorized and have full requisite power and authority to enter into and consummate assumptions and assignments and/or termination agreements of Derivative Contracts pursuant to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; and it is further

ORDERED that (i) this Order is and shall be effective as a determination that, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, all defaults, events of default, and early termination events pursuant to the applicable Derivative Contract have been cured, that all liabilities arising therefrom have been released and discharged (other than any valid setoff claims or other valid claims in respect of the assigned Derivative Contract(s) against the Debtors timely asserted pursuant to subparagraph j. of the Assumption and Assignment Procedures), and that any rights to designate an Early Termination Date have been cured or waived and (ii) the grounds on which Counterparties may object to the assignment of their Derivative Contracts shall be limited as described in subparagraph c. and e. of the second decretal paragraph of this Order; and it is further

ORDERED that the terms of each assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures and this Order shall be binding in all respects upon, shall govern the acts of, and shall inure to the benefit of, the Debtors, their estates, and their

9

creditors and interest holders; the Counterparties; all future assignees; each of their respective affiliates, successors and assigns; and any affected third parties; and it is further

ORDERED that, with respect to the Derivative Contracts assigned pursuant to the Assumption and Assignment Procedures: (a) the assigned Derivative Contracts shall be transferred and assigned to, and following the closing of the assignment remain in full force and effect for the benefit of the assignees, all future permitted assignees, each of their respective affiliates, successors, and assigns, and any affected third parties, notwithstanding any provision in any such assigned Derivative Contract that prohibits, restricts, or conditions such assignment or transfer by the applicable Debtor to the applicable assignee; (b) each assigned Derivative Contract is an executory contract under section 365 of the Bankruptcy Code; (c) the Debtors may assume each of their respective Derivative Contracts in accordance with section 365 of the Bankruptcy Code; (d) the Debtors may assign each assigned Derivative Contract in accordance with section 365 of the Bankruptcy Code, and any provisions in any assigned Derivative Contract that prohibit, restrict, or condition the assignment of such assigned Derivative Contract or allow the Counterparty to such assigned Derivative Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such assigned Derivative Contract are void and of no force and effect as to such assignment by the applicable Debtor to the applicable assignee; (e) all other requirements and conditions under section 365 of the Bankruptcy Code for the assumption and assignment by the Debtors of each assigned Derivative Contract have been satisfied; and (f) upon closing of any assignment transaction, in accordance with section 365 of the Bankruptcy Code, the assignee(s) shall be fully and irrevocably vested in all right, title, and interest of each assigned Derivative Contract, shall be liable for all continuing obligations of the assignor thereunder, and shall be

bound by all of the terms thereof (and, absent the agreement of the assignee and applicable

Counterparty, all Derivative Contracts assigned under a master agreement shall remain subject to

the terms of such master agreement, not the terms of any other existing master agreement or

Derivative Contracts between an assignee and the applicable Counterparty). Notwithstanding

anything to the contrary in the foregoing, any portions of any such assigned Derivative Contract

that purport to permit the Counterparty to terminate the Derivative Contract by reason of such

assignment, or any default or termination right arising prior to or existing at the time of the

assignment, including as a result of the commencement of a case under the Bankruptcy Code by

any of the Debtors, or the insolvency or financial condition of any of the Debtors, are void and of

no force and effect, and shall not be enforceable against the assignee(s), all future permitted

assignees, each of their respective affiliates, successors and assigns, and any affected third

parties; and the Counterparties to such Derivative Contracts shall not have the right to terminate

or cease payment, delivery, or any other performance under the Derivative Contracts, or

otherwise modify the Derivative Contracts, assert any claim, or termination payment, or impose

any penalty by reason of such assignment, or any default or termination right arising prior to or

existing at the time of the assignment, including as a result of the commencement of a case under

the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the

Debtors (provided, however, that nothing in this Order shall limit or otherwise affect any right of

a Counterparty to terminate or cease payment, delivery, or any other performance or exercise of

any other rights under its Derivative Contract if such right is not triggered by a Default by any of

the Debtors or the assignment by the applicable Debtor); and it is further

ORDERED that each Counterparty to a Derivative Contract assigned pursuant to

the Assumption and Assignment Procedures is hereby forever barred, estopped, and permanently

11

enjoined from asserting against the assigning Debtor (other than any valid setoff claims or other valid claims in respect of the assigned Derivative Contract(s) timely asserted pursuant to subparagraph j. of the Assumption and Assignment Procedures), the assignee(s), all future assignees, each of their respective successors and assigns, or the property of any of them, any default or termination right arising prior to or existing as of the assignment of the Derivative Contract or, against the assignee(s), any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors; and it is further

ORDERED that, except as provided in the Assignment Notice or this Order, upon assignment of a Derivative Contract pursuant to the Assumption and Assignment Procedures, the assigning Debtor and its estate shall have no further liabilities or obligations under the Derivative Contract, and all holders of such claims are forever barred and estopped from asserting such claims against the assigning Debtor, its property or its assets or estate; provided, however, that for the avoidance of doubt, any assignment pursuant to the Assumption and Assignment Procedures shall not relieve any guarantor of the assigning Debtor's obligations under the assigned Derivative Contract from any liability in respect of such guaranty, but no such guarantor shall assume its guaranty obligations as part of any such assignment; and it is further

ORDERED that notwithstanding any other terms herein, nothing herein shall (a) in any way reinstate a Derivative Contract validly terminated prior to an assumption or assignment of such contract or (b) unwind such termination of a Derivative Contract;

ORDERED that nothing in the Motion or any pleadings filed in response thereto shall be deemed to be an admission of fact by any of the Debtors or by the Counterparty, for any purposes whatsoever, concerning the purported termination of any of the Derivative Contracts; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate assumptions and assignments and/or termination agreements pursuant to the Assumption and Assignment Procedures and/or Termination and Settlement Procedures; and it is further

ORDERED that the Debtors and the Committee shall engage in good faith negotiations to agree within 30 days of entry of this Order on protocols for the Committee's oversight of transactions entered into pursuant to the Assumption and Assignment Procedures and Termination and Settlement Procedures (the "Protocols"). Upon agreement with the Committee on the Protocol, the Debtors shall seek entry of an order of the Court approving the Protocol. Such entry may be sought without a hearing if no parties file timely written objections. Prior to entry of an order of this Court approving the Protocols, (i) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Assumption and Assignment Procedures, and such notice shall contain either the material terms of any such proposed assignment or the material terms of the parameters of the proposed bidding process and bid acceptance criteria and (ii) the Debtors shall provide the Committee with notice of the Debtors' intent to enter into any transaction pursuant to the Termination and Settlement Procedures, and such notice shall contain the material terms of any such proposed transaction. The Committee shall use commercially reasonable efforts to provide written notice to the Debtors' counsel (which may be provided by mail, electronic mail, or facsimile) as soon as is practicable of the Committee's consent or objection to any proposed transaction. Notwithstanding anything to the contrary in this Order (and without limiting any other prerequisites in this Order), the Debtors may not consummate a transaction pursuant to the

13

Assumption and Assignment Procedures or Termination and Settlement Procedures unless either (i) the Committee (including through its advisors) consents, either pursuant to the terms of this paragraph or the Protocols, to such transaction or (ii) the Court authorizes consummation of the transaction (and the Committee shall not object to any efforts by the Debtors to seek an expedited hearing by the Court of a request for such authorization). If the Debtors and the Committee have not agreed on the Protocols within 30 days of entry of this Order, either the Debtors or the Committee may seek at any time after notice and a hearing (with at least 10 days' notice of such hearing) the Court's approval of revised terms regarding obtaining Committee consent to proposed transactions under the Assumption and Assignment Procedures and Termination and Settlement Procedures. Until otherwise ordered by the Court, the foregoing requirements in this paragraph shall remain in effect; and it is further

ORDERED that the terms of this Order shall not be applicable to any Derivative Contracts in respect of which any of the following parties filed an objection to the Motion: Metavante Corporation; Portfolio Green German; Lincore Limited, E-Capital Profits Limited, and Cheung Kong Bond Finance Limited; the City and County of Denver, Department of Revenue; the Tobacco Settlement Financing Corporation; First Choice Power, L.P.; Reliant Energy Power Supply, LLC; EnergyCo, LLC and EnergyCo Marketing and Trading; Wells Fargo, N.A., as trustee; JA Solar Holdings Co., Ltd.; West Corporation; Danske Bank A/S, London Branch; BRM Group, Ltd.; SunAmerica Life Insurance Company, AIG CDS, Inc., Lexington Insurance Company; Carlton Communications Limited; HarbourView CDO III; Norton Gold Fields Limited; Gaston Christian School, Inc.; Bank of America, National Association, Successor by Merger with LaSalle Bank National Association, in its capacity as Trustee under certain Trust Agreements; The Walt Disney Company; Deutsche Bank Trust

14

Company Americas and Deutsche Bank National Trust Company; Bank of America, National Association Successor by Merger with LaSalle Bank National Association, in its Capacity as Trustee under that certain Indenture Dated as of August 16, 2007 among Ceago ABS CDO 2007-1, Ltd., as Issuer, Ceago ABS CDO 2007-1, LLC, as Co-Issuer and LaSalle Bank National Association, as Trustee; QVT Financial LP; Bank of America, National Association Successor by Merger with LaSalle Bank National Association, in its Capacity as Trustee under that Certain Indenture Dated as of November 29, 2005 among Verde CDO Ltd., as Issuer, Verde CDO, LLC, as Co-Issuer and LaSalle Bank National Association, as Trustee; Standard Chartered Bank; The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited; U.S. Bank National Association; Lahde Capital Management Inc.; Instituto de Credito Oficial; Northcrest, Inc.; Citigroup Inc. and all of its affiliates, including Citibank, N.A.; BRE Bank SA; The Toronto-Dominion Bank; Societe Generale, Canadian Imperial Bank Commerce, Calyon, Dexia Bank Internationale a Luxembourg SA, Dexia Credit Local, Dexia Kommunalbank Deutschland AG, Dexia Banque Belgique SA and Banif - Banco de Investimento, S.A.; Occidental Energy Marketing Inc.; EPCO Holdings, Inc.; Georgetown University; Bremer Financial Corporation; and FPL Energy Power Marketing, Inc. and Florida Power & Light Company (the "Remaining Objectors"); and it is further

ORDERED that the hearing on the Motion regarding the Derivative Contracts in respect of which the Remaining Objectors filed an objection to the Motion is hereby adjourned to January 14, 2009 at 10:00 a.m. or such later date as may be either indicated in a notice filed by the Debtors with the Court or ordered by the Court; and it is further

15

ORDERED that entry of this Order is without prejudice to the rights of the

Debtors, including, but not limited to, the right to seek further, other, or different relief regarding

the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code;

and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014

are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order and/or

the terms of any assumption and assignment and/or termination agreement consummated

pursuant to the terms of the Assumption and Assignment Procedures and/or Termination and

Settlement Procedures; provided, however, that this retention of jurisdiction shall not affect the

right of any party to a jury trial or confer jurisdiction on this Court if it does not otherwise exist.

Dated: New York, New York
      December 16, 2008

                            *s/ James M. Peck*
                            UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                :

**In re**                        :     **Chapter 11 Case No.**
                :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :     **08-13555 (JMP)**
                :

           **Debtors.**       :     **(Jointly Administered)**
                :
                :
----------------------------------------------------------------x

### ORDER APPROVING CONSENSUAL
### ASSUMPTION AND ASSIGNMENT
### OF PREPETITION DERIVATIVE CONTRACTS

Upon the motion, dated January 16, 2008 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and,

together with their non-debtor affiliates, "Lehman"),[1] for entry of an order approving the

consensual assumption and assignment of Derivative Contracts (as defined in the

Motion),[2] as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

---

[1] The Debtors do not include Lehman Brothers Inc. or any affiliates of LBHI that are not chapter 11
debtors.

[2] For the avoidance of doubt, Derivative Contracts shall not include contracts or assets transferred to
Barclays Capital Inc. or its affiliates pursuant to the terms of that certain Asset Purchase Agreement dated
September 16, 2008 (as amended, supplemented, modified or clarified) among LBHI, LBI, LB 745 LLC,
and Barclays Capital Inc.

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided in accordance with the procedures set forth in the order

entered September 22, 2008 governing case management and administrative procedures

[Docket No. 285] to (i) the United States Trustee for the Southern District of New York;

(ii) the attorneys for the Official Creditors' Committee (the "Committee"); (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York (the "U.S. Trustee"); and (vi) all

Counterparties (via mail, fax, or email) in the Debtors' records to the extent that the

Counterparties' last known mail address, fax number, or email address is available to the

Debtors; and (vii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and all objections to the

Motion having been resolved, withdrawn, or overruled at the Hearing; and the Court

having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors and the Committee shall engage in good faith

negotiations to agree on protocols for the Committee's oversight of assumptions and

assignments of Derivative Contracts under the terms of this Order (the "Protocols").

Upon agreement with the Committee on the Protocols, the Debtors shall seek entry of an

order of the Court approving the Protocols. Such entry may be sought without a hearing if no parties file timely written objections. Prior to the entry of an order of this Court approving the Protocols, the Debtors shall provide the Committee with notice of the Debtors' intent to assume and assign any Derivative Contract under the terms of this Order, and such notice shall contain either the material terms of any such proposed assignment of the material terms of the parameters of the proposed bidding process and bid acceptance criteria. The Committee shall use commercially reasonable efforts to provide written notice to the Debtors (which may be provided by mail, electronic mail or facsimile) as soon as is practicable of the Committee's consent or objection to any proposed assumption and assignment. If the Debtors and the Committee have not agreed on the Protocols within 30 days of entry of this Order, either the Debtors or the Committee may seek at any time after notice and a hearing (with as least 10 days' notice of such hearing) the Court's approval of revised terms regarding obtaining Committee consent to proposed assumptions and assignments hereunder; and it is further

ORDERED that the Debtors, subject to the terms of the Protocols or with the prior consent of the Committee, are hereby authorized to assume and assign (including by novation) Derivative Contracts (that have not been terminated) with the express written consent of the applicable Counterparty (and any other consents required pursuant to the applicable Derivative Contract, related documents to which the applicable Debtor is a party, or terms of related documents with which the applicable Debtor has agreed to comply); provided, however, that if the Counterparty to the Derivative Contract is an entity whose business is limited to holding assets and issuing debt or other interests in connection with one or more securitizations or similar transactions (an "SPE"), then

3

the Debtors may use the procedures below to assume and assign any Derivative Contract with the SPE in accordance with the terms of the Derivative Contract (and nothing herein shall limit or otherwise modify, and with respect to any assignment pursuant to the procedures below, the Debtors shall comply with, any conditions to assignment pursuant to the Derivative Contract, related documents to which the applicable Debtor is a party, or terms of related documents to which the applicable Debtor has agreed to comply, including, without limitation, any requirements of the provision of notice to or obtaining consent from the Counterparty or other parties), but without the consent of the Counterparty; and it is further

ORDERED that nothing in this Order shall limit the ability of any SPE Party (as defined below) to object on any basis (including that the assignment will not be in accordance with the Derivative Contract, the terms of related documents to which the applicable Debtor is a party, or terms of related documents with which the applicable Debtor has agreed to comply) to the proposed assignment under the terms hereof of a Derivative Contract to which it is a party; and it is further

ORDERED that the Debtors may be authorized to assume and assign any Derivative Contract with an SPE in accordance with the terms of the Derivative Contract, but without the consent of the Counterparty, if, at least ten (10) business days (or in any case, such shorter period as may be agreed by all applicable SPE Parties) before such assumption and assignment, the Debtors deliver a notice (the "Assignment Notice") by overnight mail delivery service, fax, or email (where available) on (i) the Counterparty under the Derivative Contract, any other parties to whom notice is required to be provided under the Derivative Contract, any related indenture trustee, and any other

parties to whom the Debtors may agree to provide notice (and, in each case, their attorneys, if known; or if they have appeared in these cases) (collectively, the "SPE Parties"), at the last known mail address, fax number, or email address available to the Debtors, and, if different, any mail address, fax number, or email address required by the applicable Derivative Contract; and (ii) the attorneys for the Committee, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck); and it is further

ORDERED that each Assignment Notice shall set forth the following information: (i) the name and address of the Counterparty, (ii) identification of the Derivative Contract, including a list of all transactions thereunder, (iii) the identity of as many as five (5) proposed assignees, together with any guarantor (provided that the Assignment Notice need not identify the assignee if it will be an affiliate of the guarantor) and information regarding each assignee's or guarantor's status as a permissible assignee under the terms of the Derivative Contract (and in accordance with the terms of related documents to which the applicable Debtor is a party or terms of related documents with which the applicable Debtor has agreed to comply), and (iv) any amounts proposed by the Debtors to be paid to cure any existing defaults by the Debtors and compensate for actual pecuniary losses resulting from such default as required under Bankruptcy Code section 365 ("Cure Amounts") (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such Cure Amount). All Assignment Notices will be accompanied by a copy of this Order; and it is further

ORDERED that if any SPE Party who receives an Assignment Notice wishes to object to the assignment of the applicable Derivative Contract pursuant to the terms hereof then such SPE Party must deliver a written objection, so that such objection is <u>actually received</u> no later than ten (10) business days after the date of delivery of the Assignment Notice (the "<u>Objection Period</u>"), on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Lori R. Fife and Robert J. Lemons) and Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman and L. P. Harrison 3rd); and (ii) the attorneys for the Committee, Milbank, Tweed,Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, (Attn: Wilbur Foster and Evan Fleck). Any such objection must specify the grounds for such objection, including, without limitation, (i) stating the alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount, and in any event containing no less detail than the calculation of the Cure Amount provided by the Debtors) if the SPE Party disagrees with the Debtors' proposed Cure Amount, (ii) any other defaults or termination events the SPE Party alleges must be cured to effect assignment of the Derivative Contract (including any the SPE Party alleges cannot be cured, other than any Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors), (iii) any allegedly valid termination of the applicable Derivative Contract that the SPE Party asserts to have occurred (including details and documentation in support of such allegedly valid termination), (iv) the identity of any assignee or, if

6

applicable, the guarantor to whom the SPE Party objects and the grounds for such objection, and/or (v) any basis for asserting that the proposed assignment is not permitted under the applicable Derivative Contract (or in accordance with the terms of related documents to which the applicable Debtor is a party or terms of related documents with which the applicable Debtor has agreed to comply); and it is further

ORDERED that if the Debtors are unable to consensually resolve any timely delivered objection, the Debtors may consummate the proposed assignment pursuant to the terms hereof only if (i) they seek and obtain authorization of the Court to consummate the proposed assignment or (ii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, the Debtors pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or agreement between the Debtors and the objecting SPE Party, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon (at the rate provided in the applicable Derivative Contract) to which the Court finds, or the Debtors and the objecting SPE Party agree, it is entitled. Any effort by the Debtors to seek Court authorization shall be subject, with respect to procedural matters, to all applicable Federal Rules of Bankruptcy Procedure, Federal Rules of Evidence, and Local Bankruptcy Rules for the Southern District of New York; and it is further

ORDERED that, with respect to any Derivative Contract for which the Debtors deliver an Assignment Notice pursuant to the terms hereof, if (i) no objection is timely delivered by an SPE Party, or all objecting SPE Parties consent to the assignment

(including by resolving any objection), and the Debtors have complied with the terms of the Protocols or obtained the prior consent of the Committee (including through its advisors), (ii) the dispute relates solely to the amount of the Cure Amount, the Debtors have complied with the terms of clause (ii) of the eighth decretal paragraph of this Order, and the Debtors have complied with the terms of the Protocols or obtained the prior consent of the Committee (including through its advisors), or (iii) the Court authorizes the assignment, the Debtors shall be authorized, but not required, to assume and assign any Derivative Contract subject to the applicable Assignment Notice; provided, further, that if a Derivative Contract is not assumed and assigned within 60 days (or such longer period as may be ordered by the Court) following the Objection Period, the Debtors' authority pursuant to the terms hereof to assume and assign the applicable Derivative Contract shall expire, without prejudice to the Debtors' right to renew such authority by serving additional Assignment Notices for the same Derivative Contract(s) pursuant to the terms hereof; and it is further

ORDERED that (i) without limiting any requirements of the delivery of documents under the terms of the applicable Derivative Contract (or any other requirements of the applicable Derivative Contract), within five (5) business days after consummation of an assignment transaction pursuant to the terms hereof and in accordance with the terms of the Derivative Contract, but without the consent of the Counterparty, the Debtors will provide notice to the SPE Parties of the effective date of the assignment, any Cure Amount that has been paid, the identity and contact information of the assignee and its guarantor, if any, and evidence of compliance with any condition to assignment provided for in the Derivative Contract. Within ten (10) business days

8

after receipt of the notice of the assignment's consummation, an SPE Party may object by sending a written objection by the means and to the parties specified in the seventh decretal paragraph hereof, on the grounds that the Cure Amount that was paid was insufficient to cure any defaults that occurred and/or pay any amounts accruing between the date of delivery of the Assignment Notice and the assignment. No such objection will affect the validity or terms of the assignment, but the applicable Counterparty shall have a claim with administrative expense priority against the assigning Debtor for any additional Cure Amount that the Debtors agree is due or the Court determines is owed to the Counterparty, and the Debtors shall pay such additional amount within five (5) business days of the Debtors' agreement that the amount is due or entry of a final order by the Court determining that the amount is due; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions (including making payments, which may be to or for the benefit of the assignees), as may be necessary or appropriate to implement and effectuate assumptions and assignments authorized by this Order; and it is further

ORDERED that unless a Derivative Contract is being assigned with the express written consent of the applicable Counterparty (and any other consents required pursuant to the applicable Derivative Contract, related documents to which the applicable Debtor is a party, or terms of related documents with which the applicable Debtor has agreed to comply), in any instance where a Derivative Contract is memorialized pursuant to a master agreement, the Debtors may only assume and assign the master agreement

9

and all transactions entered into under the master agreement to a single assignee pursuant to these procedures; and it is further

ORDERED that nothing in this Order shall affect any right of any Counterparty to exercise any rights described in Sections 362, 555, 556, 559, 560, 561, or 562 of the Bankruptcy Code; and it is further

ORDERED that this Order shall not modify in any manner the Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, entered by this Court on December 16, 2008, or any supplemental orders that may be entered by the Court from time to time in respect thereof (collectively, the "December 2008 Order"), or any objections filed in respect of the motion seeking entry of the December 2008 Order, and the delivery of an Assignment Notice pursuant to the terms of this Order with respect to a Derivative Contract is without prejudice to the rights of the Debtors to seek to assume and assign such Derivative Contract pursuant to the terms of the December 2008 Order; and it is further

ORDERED that entry of this Order is without prejudice to any other rights of the Debtors, including, but not limited to, the right to assert that any purportedly terminated contract was not validly terminated and to seek further, other, or different relief regarding the Derivative Contracts pursuant to, among other things, section 365 of the Bankruptcy Code; and it is further

ORDERED that this Order does not apply to, and shall not be effective with respect to, any Derivative Contract in which the Counterparty is Libra CDO Limited, Pyxis ABS CDO 2007-1 Ltd., or MKP Vela CBO, Ltd.; and it is further

10

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 6006(a) and 9014 are satisfied; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein; provided, however, that this retention of jurisdiction shall not affect the right of any party to a jury trial or confer jurisdiction on this Court if it does not otherwise exist.

Dated: January 28, 2009
      New York, New York

                                          */s/ James M. Peck*
                                          UNITED STATES BANKRUPTCY JUDGE