WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

| | |
|---|---|
| In re | : |
| | : Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : 08-13555 (JMP) |
| Debtors. | : (Jointly Administered) |

---------------------------------------------------------------- x

| | |
|---|---|
| BOARD OF EDUCATION OF THE CITY OF CHICAGO | : |
| Plaintiff, | : |
| -against- | : |
| LEHMAN BROTHERS SPECIAL FINANCING INC. | : |
| Defendant. | : Adversary Proceeding |
| | : No.: 09-01455 (JMP) |

**DEFENDANT LEHMAN BROTHERS SPECIAL**
**FINANCING INC.'S MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................... 1

II.   FACTUAL BACKGROUND........................................................................ 3

    A.    The Interest Rate Swap Agreement ...................................................... 3

    B.    Plaintiff Wrongfully Has Withheld Payments from LBSF.................................... 4

III.   ARGUMENT AND AUTHORITIES ............................................................ 5

    A.    The Legal Standard: A Court Should Grant the Motion to Dismiss When the Complaint Is Based on Legal Positions that Are Contrary to Governing Law ................................................................................. 6

    B.    The Court Should Dismiss Count I Because Plaintiff May Not Withhold Performance of This Executory Contract ............................................. 6

    C.    The Court Should Dismiss Count II Because Plaintiff Cannot Bar Assumption and Assignment Based on an Ipso Facto Provision........................ 11

    D.    The Court Should Dismiss Count III Because Plaintiff Is Required to Perform Under the Contract While LBSF Determines Whether to Assume or Reject the Contract ....................................................... 15

IV.   CONCLUSION AND REQUESTED RELIEF ............................................ 17

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc.*
  *(In the Matter of Allied Tech., Inc.)*,
  25 B.R. 484 (Bankr. S.D. Ohio 1982) ................................................................12, 13

*Cont' l Energy Assocs, Ltd. P'ship v. Hazleton Fuel Mgmt. Co.*
  *(In re Cont'l Energy Assocs. Ltd. P'ship)*,
  178 B.R. 405 (Bankr. M.D. Pa. 1995) ................................................................16, 17

*In re Elliot*,
  94 B.R. 343 (E.D. Pa. 1988) ...........................................................................13

*In re Ernie Haire Ford, Inc.*,
  403 B.R. 750 (Bankr. M.D. Fla. 2009) .................................................................7, 8

*ESPN, Inc. v. Office of the Comm'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999) ..................................................................14

*In re Feyline Presents, Inc.*,
  81 B.R. 623 (Bankr. D. Colo. 1988) ..................................................................16

*In re Finnie*,
  Nos. 05-16373, 05-3652 (AJG), 2007 WL 1574294
  (Bankr. S.D.N.Y. May 29, 2007) ......................................................................14

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002) ..........................................................................13

*Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*,
  175 B.R. 855 (Bankr. D.N.J. 1994) ...................................................................13

*L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*,
  209 F.3d 291 (3d Cir. 2000).............................................................................12

*McLean Indus., Inc. v. Med. Lab. Automation, Inc. (In re McLean Indus., Inc.)*,
  96 B.R. 440 (Bankr. S.D.N.Y. 1989)............................................................10, 15, 17

*In re Monarch Capital Corp.*,
  163 B.R. 899 (Bankr. D. Mass. 1994) .................................................................16

*N.L.R.B. v. Bildisco & Bildisco*,
  465 U.S. 413 (1984).................................................................................15, 17

*Neitzke v. Williams*,
   490 U.S. 319 (1989)........................................................................................6

*Pub. Serv. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc.*
   *(In re Pub. Serv. Co. of New Hampshire)*,
   884 F.2d 11 (1st Cir. 1989).........................................................................15, 17

*In re PublicData-Link Sys. Inc. v. Whitcomb & Keller Mortgage Co.*
   *(In re Whitcomb & Keller Mortgage Co., Inc.)*,
   715 F.2d 375 (7th Cir. 1983) ...........................................................................15

*Summit Inv. & Dev. Corp. v. Leroux (In re Leroux)*,
   69 F.3d 608 (1st Cir. 1995)................................................................................7

*In re Texaco Inc.*,
   73 B.R. 960 (Bankr. S.D.N.Y. 1987).................................................................7

*Thomas v. City of New York*,
   143 F.3d 31 (2d Cir. 1998)...............................................................................14

*U.S. v. Dewey Freight Sys., Inc.*,
   31 F.3d 620 (8th Cir. 1994) .............................................................................16

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*,
   973 F.2d 1065 (3d Cir. 1992)...........................................................................17

## STATUTES/RULES

11 U.S.C. § 365(e)(1)(B) ...................................................................9, 11, 12, 13

Fed. R. Civ. P. 12(b)(6)........................................................................................1

Fed. R. Civ. P. 7012(b) ........................................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(6)(b)"), as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7012(b), Defendant Lehman Brothers Special Financing Inc. ("LBSF") submits this motion to dismiss the Complaint for Declaratory Judgment ("Complaint") filed by Plaintiff Board of Education of the City of Chicago ("Plaintiff") and in support of the motion respectfully states as follows:

## I.    PRELIMINARY STATEMENT

The Complaint raises many of the same issues that this Court recently decided in connection with the motion to compel Metavante Corporation to comply with its contractual obligations. Plaintiff, like Metavante, has an executory swap contract with LBSF but refuses to perform under that contract. The Complaint therefore seeks a declaration that Plaintiff can avoid its contractual obligations to LBSF simply because of the bankruptcy filing and alleged pre-bankruptcy financial condition of LBSF's parent and guarantor Lehman Brothers Holdings Inc. ("LBHI"). Applicable law and this Court's ruling on the Metavante motion, however, prevent LBSF's counterparties from withholding performance based on such an *ipso facto* provision while LBSF decides whether to assume or reject the contract. The Court should dismiss the Complaint.

As explained in more detail below, the agreement at issue is an interest rate swap transaction entered into by Plaintiff and LBSF in December 2003. Generally, under the agreement, LBSF agreed to make monthly payments based on a floating interest rate on a notional amount of $95.35 million. Plaintiff agreed to make semiannual payments based on a fixed interest rate on the same notional amount.

Due to declining interest rates, the value of LBSF's position has increased significantly. As of the time of this filing, Plaintiff owed LBSF significant amounts under the

Interest Rate Swap Agreement (as defined below). Yet Plaintiff has refused to make such payments to LBSF.[1]

In direct contravention of the Bankruptcy Code, Plaintiff improperly is attempting to take advantage of the Debtors' chapter 11 cases and avoid Plaintiff's obligations to make payments to LBSF. The purported rationale for withholding payments to LBSF is that the commencement of a chapter 11 case by LBHI and the alleged pre-bankruptcy financial condition of LBHI purportedly constituted "Events of Default" under the agreement. Plaintiff's failure to make payments under the agreement, however, ignores section 365(e)(1) of the Bankruptcy Code, which expressly prevents parties from modifying the rights of a debtor under an executory contract "at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the . . . financial condition of the debtor at any time before the closing of the case; [or] the commencement of a case under this title . . . ."

Moreover, while LBSF is determining whether to assume or reject the agreement, the unilateral cessation of required payments is prohibited and constitutes a violation of the automatic stay. By refusing to pay LBSF amounts owed under the agreement, Plaintiff has effectively usurped LBSF's well-recognized right to assume or reject an executory contract. Indeed, Plaintiff goes so far as to seek a declaration that LBSF no longer has the right to assume and assign the agreement simply because LBSF's guarantor commenced a bankruptcy case. These same arguments were extensively briefed and argued in the Metavante motion and this Court already has ruled that these positions have no merit. The Complaint should be dismissed.

---

[1] Notably, in September 2009, Plaintiff did pay LBSF the amounts owed on that date, less amounts that LBSF had not paid previously under the contract, and thus has partially performed the contract since LBSF's bankruptcy filing.

## II.  FACTUAL BACKGROUND

### A.  The Interest Rate Swap Agreement

LBSF and Plaintiff entered into a standard 1992 ISDA Master Agreement dated as of December 3, 2003 (the 1992 ISDA Master Agreement and schedule thereto are collectively referred to as the "Master Agreement").  (*See* Compl. ¶ 13.)  The Master Agreement sets out the basic terms of the parties' contractual relationship and contemplates being supplemented by trade confirmations that provide the economic terms of the specific transactions agreed to by the parties.  (*See* Compl. Ex. 1.)  Under the Master Agreement, Plaintiff and LBSF entered into an interest rate swap transaction (the "Transaction"), the terms of which were documented pursuant to a trade confirmation dated December 8, 2003 (the "Confirmation") (the Master Agreement and Confirmation are collectively referred to as  the "Interest Rate Swap Agreement").  (*See* Compl. ¶ 14; Compl. Ex. A.)

Pursuant to the Interest Rate Swap Agreement, LBSF has an obligation to pay 70% of the floating USD-LIBOR-BBA interest rate every month beginning January 1, 2004, on a notional amount of $95,350,000, which notional amount declines over time as provided in Annex 1 to the Confirmation (the "Notional Amount").  (*See* Compl. Ex. A (Confirmation at 1-2).) Plaintiff has the obligation to pay a fixed rate of interest (3.771%) on the Notional Amount semiannually on the first calendar day of each March and September, beginning March 1, 2004 through March 1, 2034.  (*See id.* (Confirmation at 2).)  LBHI acts as a credit support provider for payment obligations of LBSF under the Agreement.  (*See* Exhibit A of schedule to Master Agreement.)  Section 2(c) of the Master Agreement permits any party owing a payment to net out any amounts payable to it by the other party.

An "Event of Default" is defined in Section 5(a) of the Master Agreement to include the bankruptcy of any party or credit support provider.  Section 6(a) of the Master

Agreement provides that if an Event of Default with respect to a party (the "Defaulting Party") has occurred and is continuing, the other party (the "Non-Defaulting Party") may designate an Early Termination Date for the Agreement.

Section 6(c) of the Master Agreement provides that if a Non-Defaulting Party designates an Early Termination Date under Section 6(a), then the Interest Rate Swap Agreement, including all Transactions thereunder, will terminate on that date even if the Event of Default is later cured.

Section 6(e) of the Agreement provides that if an Early Termination Date occurs, the parties will make a final payment pursuant to the payment measure and method selected by the parties in the schedule to the Agreement.

In sum, if there is an Event of Default then the Non-Defaulting Party has the right to terminate the Interest Rate Swap Agreement. Upon termination, a final payment is calculated and paid in order to put the parties into the same economic position (as determined at the time of the termination) as if the termination had not occurred. Under the terms of the Interest Rate Swap Agreement, if Plaintiff terminates the Agreement, it would owe a substantial payment to LBSF – reflecting the value of the Agreement to LBSF.

**B.      Plaintiff Wrongfully Has Withheld Payments from LBSF**

Although Plaintiff alleges in the Complaint that there has been an Event of Default based on the bankruptcy of LBHI and therefore Plaintiff has refused to perform, Plaintiff has not attempted to terminate the Interest Rate Swap Agreement. (*See generally* Compl.) Instead, Plaintiff simply has refused to perform its ongoing obligations under the Interest Rate Swap Agreement. (*See* Compl. ¶ 36.)

From December 3, 2003 through September 1, 2008, the parties performed their payment obligations under the Agreement. Because the floating rate owed by LBSF (70% of the

prevailing USD-LIBOR-BBA interest rate) was less than the fixed rate owed by Plaintiff (3.771%) between October 1, 2008 and June 1, 2009, Plaintiff owed LBSF a net payment of $1,127,996.31.  (*See* Compl. Ex. 2 Annex D.)  Plaintiff refused to make this payment.  (*See* Compl. ¶ 36.)

Plaintiff currently owes LBSF significant amounts under the Interest Rate Swap Agreement.  But rather than performing under the Interest Rate Swap Agreement, as required by law, or at least electing to terminate the Interest Rate Swap Agreement pursuant to section 560 of the Bankruptcy Code promptly after the commencement of LBSF's chapter 11 case, Plaintiff seeks instead to wait out the market and hope that it turns such that Lehman is no longer in the money. In essence, Plaintiff seeks to use the Debtors' chapter 11 cases to deprive LBSF's estate and creditors of value by trying to evade its contractual obligations to LBSF.

## III.    <u>ARGUMENT AND AUTHORITIES</u>

In its Complaint, Plaintiff brings three counts seeking a declaratory judgment that: (1) the bankruptcy and financial condition of LBHI constitute Events of Default that are material and enforceable against LBSF and "permanently excuse[] [Plaintiff's] obligations to make payments to LBSF in respect of the Swap Agreement" (Compl. ¶ 51); (2) "LBSF cannot cure the Events of Default relating to [LBHI's] bankruptcy and financial condition and, accordingly, cannot assume or assign the Swap Agreement" (*id.* ¶ 58); and (3) Plaintiff "has no obligation to make any payments under the [Interest Rate] Swap Agreement . . . with respect to the time that LBSF failed to perform its obligations under the Swap Agreement."  (*Id.* ¶ 61.)  As explained below, each of these arguments fails as a matter of law under the same rationale applied by this Court to adjudicate the Metavante motion.

**A. The Legal Standard: A Court Should Grant the Motion to Dismiss When the Complaint Is Based on Legal Positions that Are Contrary to Governing Law.**

Where a complaint is premised on legal positions that are contrary to governing law, a plaintiff has failed to state a cognizable claim, and Rule 12(b)(6) authorizes dismissal. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). As the Court discussed in *Neitzke*:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory or on a close but ultimately unavailing one."

*Id.* at 1832 (citation omitted). Here, assuming all of the facts alleged in the Complaint are true, Plaintiff has not stated a claim for relief because its claims are contrary to governing law.

**B. The Court Should Dismiss Count I Because Plaintiff May Not Withhold Performance of This Executory Contract.**

Plaintiff's first count seeks a declaration that it has no obligation to make payments under the Interest Rate Swap Agreement because LBHI filed for bankruptcy and allegedly failed to pay its debts as they became due. (Compl. ¶ 50.) Plaintiff argues that under the Master Agreement if an Event of Default had occurred and is continuing, Plaintiff is excused from performing. (*See id.* ¶ 44.) Plaintiff claims that an Event of Default occurred and is continuing because LBHI failed to pay its debts as they became due and commenced a bankruptcy case on September 15, 2008. (*See id.* ¶ 50.) However, section 365(e)(1) of the Bankruptcy Code prevents Plaintiff from relying upon such *ipso facto* provisions to withhold its performance under the Interest Rate Swap Agreement.

Section 365(e)(1) provides that "any right or obligation under [an executory contract] may not be terminated or modified, at any time after the commencement of the case,

solely because of a provision in such contract or lease that is conditioned on—(A) the insolvency or financial condition of the debtor at any time before the closing of the case; [or] (B) the commencement of a case under this title . . . ."  Plaintiff relies on Sections 2(a)(iii) and 5(a)(vii) of the Master Agreement to withhold performance.  However, because these provisions modify the contractual rights of LBSF based upon the commencement of bankruptcy cases or the financial conditions of the Debtors, they are void and unenforceable against LBSF.

Such *ipso facto* clauses are void and unenforceable because the automatic termination or modification of a debtor's contractual rights deters rehabilitation and causes a forfeiture of assets.  *See Summit Inv. & Dev. Corp. v. Leroux (In re Leroux)*, 69 F.3d 608, 610 (1st Cir. 1995).  Most courts have interpreted section 365(e)(1) to "abrogate[] the power of *ipso facto* clauses," such that "[n]o default may occur pursuant to an *ipso facto* clause and no reliance may be placed upon an alleged default where the only cause for default is the debtor's commencement of a bankruptcy case."  *In re Texaco Inc.*, 73 B.R. 960, 965 (Bankr. S.D.N.Y. 1987) (holding that counterparty could not accelerate notes because such right was only triggered upon a bankruptcy default clause, which was void pursuant to section 365(e)(1)); s*ee also In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 759 (Bankr. M.D. Fla. 2009) (holding that counterparty's enforcement of right to terminate contract at will was unenforceable under section 365(e)(1) where the sole basis for termination was the debtor's bankruptcy filing).

Indeed, this Court recently addressed a virtually identical issue in a motion filed by LBSF to compel Metavante Corporation to perform under a swap agreement with LBSF.  (*See* Order, Docket No. 5209.)  The Court rejected Metavante's arguments that it was permitted to withhold performance owed to LBSF based on the bankruptcy filings of LBSF, LBHI, or the financial condition of either one.  (*See* Tr. from Sept. 15, 2009 hearing at 101-113, attached

hereto as Exhibit A.) The Court reasoned that such a condition of performance is an *ipso facto* provision barred by section 365 and not protected by any of the Bankruptcy Code's "safe harbor" provisions that preserve certain contractual rights of certain counterparties to certain derivative contracts. (*See id.* at 110:21-25 ("[Metavante's] conduct of riding the market for the period of one year, while taking no action whatsoever, is simply unacceptable and contrary to the spirit of these [safe-harbor] provisions of the Bankruptcy Code.").

Plaintiff's Complaint essentially raises two arguments to defend its withholding of performance – both of which were present in the Metavante matter and resolved in the Metavante ruling: (1) that LBSF's rights under the Swap Agreement supposedly were modified when LBHI commenced its bankruptcy case and before LBSF commenced its bankruptcy case; and (2) that Plaintiff is relying on the bankruptcy and financial condition of LBHI and not LBSF. Both of these arguments already have been rejected by this Court.

First, LBSF has the right to receive payments on bi-annual dates after the bankruptcy filing and as such the right to receive payments on those dates could not be known or altered until those payment dates. The contractual provisions relied upon by Plaintiff did not permanently and immutably alter LBSF's contractual rights upon the commencement of LBHI's chapter 11 case the way they would have if Plaintiff had terminated the Interest Rate Swap Agreement on such date. Instead, as alleged failures of a condition precedent to Plaintiff's obligations, the alleged defaults continue to alter LBSF's rights on an ongoing basis whenever Plaintiff would have an obligation to pay LBSF but for such alleged failures. Accordingly, the modifications of LBSF's position occurred only after LBSF's bankruptcy. Under the Interest Rate Swap Agreement, Plaintiff has an obligation to make payments twice a year, on March 1 and on September 1. Plaintiff concedes that it made a payment on September 1, 2008. (*See*

Compl. ¶ 24.) Therefore, the next payment was due on March 1, 2009. Plaintiff failed to make that payment due to an alleged failure of a condition precedent. (*See, e.g.*, Compl. ¶ 17 ("Each payment obligation is expressly subject to the condition precedent that no 'Event of Default' has occurred and is continuing under the Swap Agreement.").) It was only at that point in time – well after the commencement of LBSF's chapter 11 case – that LBSF's contractual rights could have been modified due to the alleged events of default that allegedly occurred prior to the commencement of LBSF's chapter 11 case.

Next, Plaintiff argues that it was relying only upon the financial condition and bankruptcy of LBHI to justify its failure to perform, and not the financial condition or bankruptcy of LBSF. (*See* Compl. ¶ 49.) This argument also fails. (*See* Tr. from Sept. 15, 2009 Hearing at 108:12-13 (compelling performance even though "[i]t is clear that the filing of bankruptcy petitions by LBHI and LBSF constitute events of default under the Agreement.").) First, the Bankruptcy Code is clear that once LBSF filed for bankruptcy, its rights to receive performance under the Agreement may not be modified because of a provision in an executory contract that is conditioned on "the commencement of *a case* under this title." 11 U.S.C. § 365(e)(1)(B) (emphasis added). This language must be contrasted with the words used by Congress earlier in the same provision. When Congress intended to refer to the filing by the Debtor it used the words "the case." *See id.* 365(e)(1) ("any right or obligation under such contract or lease may not be terminated or modified, at any time after commencement of *the case* solely because of a provision in such contract or lease….") (emphasis added). The plain words of the Bankruptcy Code thus make it clear that the contractual provision relied on by Plaintiff is an unenforceable *ipso facto* clause regardless of whether it modifies LBSF's rights based on its own bankruptcy *or* the bankruptcy of LBHI.

Moreover, the sole purpose of LBHI's guarantee of LBSF's performance and the existence of LBHI as a Credit Support Provider is to protect against the financial condition of LBSF. Indeed, a guarantor is only ever needed if there are concerns regarding the financial condition of the principal obligor and its ability to perform. *See* Corpus Juris Secondum Guaranty § 2 ("A 'guaranty' is a contract of secondary liability, and a guarantor will be required to make payment only when the primary obligor has first defaulted."). Absent concerns about the financial condition of LBSF, LBHI's guarantee is irrelevant. Therefore, section 2(a)(iii)(1) constitutes an unenforceable *ipso facto* provision as to LBSF to the extent that it permits Plaintiff to withhold performance based on the financial condition or bankruptcy of LBHI. (*See generally* Tr. from Sept. 15, 2009 hearing at 112:13-18 ("[T]he argument that LBSF or LBHI may have defaulted under other specified indebtedness, as that term is defined in the Agreement, relies upon the financial condition of bankruptcy debtors to withhold performance. That is also unenforceable as an *ipso facto* clause that may not be enforced under the Bankruptcy Code Section 365(e)(1)(A).").)

Finally, as this Court recognized in connection with the Metavante motion, the Interest Rate Swap Agreement is a garden variety executory contract. (*See* Tr. from Sept. 15, 2009 hearing at 109:19-21.) As such, Plaintiff may not withhold performance prior to assumption or rejection by the debtor. *See e.g., McLean Indus., Inc. v. Med. Lab. Automation, Inc. (In re McLean Indus., Inc.*), 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ( "a debtor-in-possession's ability to continue to perform and to compel performance with respect to an assumable executory contract is usually the life blood of its reorganization."); *see also infra* Section III.D.

For these reasons, Section 2(a)(iii) of the Master Agreement cannot justify Plaintiff's attempt to excuse its performance. Thus, the Court should dismiss Count I, which seeks a declaration that Plaintiff need not perform under the Interest Rate Swap Agreement.

**C.**      **The Court Should Dismiss Count II Because Plaintiff Cannot Bar Assumption and Assignment Based on an *Ipso Facto* Provision.**

Count II of the Complaint seeks a declaration that LBSF cannot assume or assign the Interest Rate Swap Agreement because Plaintiff alleges that LBSF cannot cure the Events of Default related to LBHI's bankruptcy filing and financial condition. (*See* Compl. ¶ 57.) Plaintiff's argument fails for several reasons.

Plaintiff is incorrect that LBSF would be required to cure a default based on the bankruptcy or financial condition of LBHI. To the contrary, section 365(a) of the Bankruptcy Code permits a debtor to assume "any executory contract." Section 365(b) of the Bankruptcy Code establishes certain conditions that must be satisfied prior to the assumption of an executory contract if the contract contains a default:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

However, certain defaults need not be cured and do not require the debtor to provide adequate assurance of future performance.  Section 365(b)(2) provides an exception to the requirements of section 365(b)(1) for certain defaults:

> (2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—
>> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>>
>> (B) the commencement of a case under this title; [or]
>>
>> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement…

11 U.S.C. § 365(b)(2).  The purpose of section 365(b)(2) is to ensure that "the requirements of section 365(b)(1) do not apply to defaults triggered by provisions relating to the insolvency or financial condition of the debtor, the commencement of a Chapter 11 case, or the appointment of a trustee in the case or a custodian before the case."  *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).

Plaintiff alleges that "the defaults relating to [LBHI's] bankruptcy filing and financial condition are incurable."  (Compl. ¶ 57.)  However, as stated above, these alleged defaults are related to "the financial condition of the debtor" and related to "the commencement of a case under this title" and thus need not be cured before LBSF assumes and assigns the Interest Rate Swap Agreement.

The policies underlying section 365 of the Bankruptcy Code favor the preservation and assumption of valuable contracts by the debtor and pursuant to Section 365(b) the debtor's assumption effectively acts to cure any default that arises from the breach of *ipso facto* clauses.  *See Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc. (In the Matter of Allied Tech., Inc.)*, 25 B.R. 484, 496 (Bankr. S.D. Ohio 1982) (holding that the debtor-lessee's act of assuming an unexpired lease "acts to cure this 'default,' a curing which is preemptive of any

relevant state law.").  As the court in *Allied Technology* observed, "[a]ny conclusion to the contrary would render a debtor's right to assign (or to preserve an assignment prior to assumption) meaningless, and would obviously be contrary to 11 U.S.C. § 365." *Id.*  Not only would a different conclusion render the contract valueless to the debtor – it would ensure that no contract that contains *ipso facto* clauses could ever be assigned:

> In essence, to permit forfeiture of an assumed lease on the basis of enforcement of an *ipso facto* clause against a performing nondebtor assignee would render any assumed lease containing an *ipso facto* clause valueless for purposes of assignment, and would be wholly inconsistent with the concept implicit in 11 U.S.C. § 365 that assumption of a lease rectifies the lease, and otherwise places the parties in their prepetition postures.

*Id.*

This Court previously held in its "Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts" (the "Assignment Order") that "any Default relating to the commencement of a case under the Bankruptcy Code by any of the Debtors, or the insolvency or financial condition of any of the Debtors . . . need not be cured prior to assignment." (Assignment Order, Docket Number 2257 at 4.)  Plaintiff was timely served with a copy of the motion seeking entry of the Assignment Order and did not object to its entry.  (*See* Aff. of Service, Docket Number 1639 Ex. C at 17.)  Accordingly, Plaintiff is deemed to have consented to the entry of the Assignment Order.  *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (by failing to object to a sale motion of which it had adequate notice, a creditor is deemed to consent to the sale); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (same).

Regardless, Count II should also be dismissed because it is not ripe. There is no pending motion to assume and assign the Interest Rate Swap Agreement and the assignment notice delivered by LBSF to Plaintiff pursuant to the Assignment Order is no longer valid because it was delivered to Plaintiff on June 30, 2009, more than 60 days ago. (*See* Compl. Ex. B; Assignment Order, Docket Number 2257 at 6 (debtors authority to assume and assign expires without prejudice to renewal if not assigned within 60 days). It is, therefore, not appropriate to resolve the question of whether the agreement could be assumed and assigned based on the hypothetical possibility that there might be an assignment motion or notice in the future. To the extent that Plaintiff has a reason to challenge any attempt by LBSF to assign the Interest Rate Swap Agreement in the future, it will have the opportunity to raise such a challenge at that time. Thus, there is no harm to the Plaintiff from dismissing this count as unripe. *See In re Finnie*, Nos. 05-16373, 05-3652 (AJG), 2007 WL 1574294, at *7 (Bankr. S.D.N.Y. May 29, 2007) ("The dispute is not fit for a judicial decision as it depends on 'future events so contingent in nature that there is no certainty they will ever occur.' Moreover, none of the parties would suffer any hardship from the Court's refusal to issue a declaratory judgment. As such, the controversy is too speculative to be ripe.") (quoting *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998)).

For all of these reasons, the Court should dismiss Plaintiff's claim for a declaratory judgment that LBSF may not assume and assign the Interest Rate Swap Agreement.[2]

---

[2] Additionally, Plaintiff actually made a payment under the Interest Rate Swap Agreement in September 2009. Thus, it has elected its remedy – continuation of the contract – and now cannot also argue that the Interest Rate Swap Agreement is not able to be assumed and assigned. *See ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 387-88 (S.D.N.Y. 1999) (holding that Major League Baseball could not terminate contract after electing to perform under contract).

**D. The Court Should Dismiss Count III Because Plaintiff Is Required to Perform Under the Contract While LBSF Determines Whether to Assume or Reject the Contract.**

Finally, in Count III, Plaintiff requests a declaration that LBSF's failure to perform its obligations while it was deciding whether to assume and assign or reject the Interest Rate Swap Agreement "permanently excuses [Plaintiff's] performance" during that period. (Compl. ¶ 60.) However, this argument violates basic tenets of bankruptcy law, and already has been rejected by this Court.

As this Court recently recognized in connection with the Metavante motion, "Under relevant case law it is clear that while an unassumed executory contract is not enforceable against a debtor . . . such a contract is enforceable by a debtor against the counterparty." (Tr. from Sept. 15, 2009 hearing at 110:3-6.) This Court's holding is consistent with the United States Supreme Court's prior holding that an unassumed executory contract is not enforceable against a debtor. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 413, 531 (1984). On the other hand, an unassumed executory contract, while not enforceable *against* the debtor, is still enforceable by the debtor against the counterparty. *See e.g., In re McLean Indus., Inc.*, 96 B.R. at 449 ( "a debtor-in-possession's ability to continue to perform and to compel performance with respect to an assumable executory contract is usually the life blood of its reorganization."); *Pub. Serv. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc. (In re Pub. Serv. Co. of New Hampshire)*, 884 F.2d 11, 14 (1st Cir. 1989) ("Ordinarily, the debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. In the meantime, the executory contract remains in effect and creditors are bound to honor it.") (citation omitted); *In re PublicData-Link Sys. Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Keller Mortgage Co., Inc.)*, 715 F.2d 375, 378-79 (7th Cir. 1983) (affirming bankruptcy court's entry of a restraining order that prohibited non-debtor counterparty from ceasing to

provide essential services to the debtor pending debtor's determination to assume or reject agreement and notwithstanding debtor's pre-petition arrearage).

Plaintiff's argument that it would not be required to pay the net amounts owing under the Interest Rate Swap Agreement simply because LBSF allegedly has not performed under the contract ignores this well-settled law. Even if LBSF is in default under the Agreement, Plaintiff must perform. *See, e.g., U.S. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 625 (8th Cir. 1994) (holding that an unassumed executory contract is not enforceable against the debtor, notwithstanding debtor's default thereunder); *In re Monarch Capital Corp.*, 163 B.R. 899, 906 (Bankr. D. Mass. 1994) (same); *see also In re Feyline Presents, Inc.*, 81 B.R. 623, 626-27 (Bankr. D. Colo. 1988) (holding that non-debtor could not unilaterally enforce contractual right prior to debtor's decision to assume or reject, notwithstanding counterparty's contention that debtor was unable to perform obligations under the contract).

A similar situation was addressed in *Continental Energy Associates Limited Partnership v. Hazleton Fuel Management Co.* (*In re Cont'l Energy Assocs. Ltd. P'ship*), 178 B.R. 405 (Bankr. M.D. Pa. 1995), where the court compelled a counterparty to continue to supply natural gas to the debtor until such time as the debtor assumed or rejected the contract even though the debtor was in prepetition arrearage in excess of $15 million. *Id.* at 407-08. The court reasoned that if the counterparty was permitted to withhold performance, then:

> Not only does this saddle an ailing company with an additional burden which it is unlikely to overcome, it pressures the Debtor to surrender the "breathing space" normally allowed to it to consider the assumption or rejection of the contract. As a matter of its very existence, the Debtor is influenced to immediately assume the contract with all of its administrative burdens.

*Id.* at 408.[3]  The facts of this case are even stronger because Plaintiff still owes a net amount to LBSF even subtracting any alleged amounts that LBSF owes to the Plaintiff.  Thus, there is no basis for Plaintiff to withhold performance under the Interest Rate Swap Agreement, and its request for a declaration seeking to excuse its performance based on LBSF's alleged non-performance should be rejected.

## IV.  <u>CONCLUSION AND REQUESTED RELIEF</u>

For the foregoing reasons, LBSF requests that this Court enter an order granting LBSF's motion and dismissing Plaintiff's Complaint in its entirety.  LBSF requests any other relief to which it may be entitled.

Dated:  October 5, 2009
New York,  New York

/s/ Richard W. Slack
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor and
Debtor In Possession

---

[3] *See, e.g., N.L.R.B.*, 465 U.S. at 531; *In re McLean Indus., Inc.*, 96 B.R. at 449; *In re Pub. Serv. Co. of New Hampshire*, 884 F.2d at 14; *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1078-79 (3d Cir. 1992).