Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for the Board of Education of the City of Chicago*

UNITED STATES BANKRUPTCY COURT
Southern DISTRICT New York
------------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :    Case No. 08-13555 (JMP)
                                                    :
           Debtors.                                 :    Jointly Administered
------------------------------------------------------------------x
                                                    :
BOARD OF EDUCATION OF THE                           :
CITY OF CHICAGO,                                    :
                                                    :
                                                    :
           Plaintiff,                               :    Adv. Proc. No. 09-01455 (JMP)
v.                                                  :
                                                    :
LEHMAN BROTHERS SPECIAL                             :
FINANCING INC.,                                     :
                                                    :
           Defendant.                               :
------------------------------------------------------------------x

**PLAINTIFF'S RESPONSE TO DEFENDANT LEHMAN BROTHERS
SPECIAL FINANCING INC.'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT...........................................................................................................................3

    A.   The Complaint Adequately Alleges That the School Board Should Not Be Compelled to Continue Performance When LBSF Refuses to Perform Its Post-Petition Obligations. ..............................................................................................4

    B.   The Default Under the Swap Agreement Relates to the Financial Condition of Holdings, Not LBSF, and is Not an Unenforceable Ipso Facto Provision. ............5

    C.   The School Board Should Not be Required to Pay for Hedging Services it did Not Receive. ..................................................................................................................6

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Associated Indem. Corp. v. Fairchild Indus., Inc., L.P.*,
    961 F.2d 32 (2d Cir. 1992) ............................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 3

*Continental Energy Associates Limited Partnership v. Hazleton Fuel Management Co.*
    *(In re Cont'l Energy Assocs. Ltd. P'ship)*,
    178 B.R. 405 (Bankr. M.D. Pa. 1995) ........................................................................ 5, 7

*Data-Link Systems, Inc. v. Whitcomb & Keller Mortgage Co., Inc. (In re Whitcomb &*
    *Keller Mortgage Co., Inc.)*,
    715 F.2d 375 (7th Cir. 1983) ..................................................................................... 4-5

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001) ......................................................................................... 3

*In re Feyline Presents, Inc.*,
    81 B.R. 623 (Bankr. D. Colo. 1988) ......................................................................... 7-8

*In re Ionosphere Clubs, Inc.*,
    85 F.3d 992 (2d Cir. 1996) ........................................................................................... 9

*In re Lehman Brothers Holdings Inc.*,
    No. 08-13555(JMP), (Bankr. S.D.N.Y. Sept. 15, 2009) ......................................... 2-3, 5

*In re Monarch Capital Corp.*,
    163 B.R. 899 (Bankr. D. Mass. 1994) ....................................................................... 7-8

*In re Superior Toy & Mfg Co.*,
    78 F.3d 1169 (7th Cir. 1996) ........................................................................................ 9

*McLean Industries, Inc. v. Medical Laboratory Automation, Inc.*
    *(In re McLean Indus., Inc.)*,
    96 B.R. 440 (Bankr. S.D.N.Y. 1989) ............................................................................ 4

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) ...................................................................................................... 7

*U.S. v. Dewey Freight Sys. Inc.*,
    31 F.3d 620 (8th Cir. 1994) ....................................................................................... 7-8

**FEDERAL STATUTES**

11 U.S.C. § 365(e)(1) ............................................................................................................ 5

**RULES**

Fed. R. Bankr. P. 7008 .................................................................................................................3

Fed. R. Civ. P. 8............................................................................................................................3

Plaintiff Board of Education of the City of Chicago (the "School Board"), by and through its undersigned counsel, hereby submits its response in opposition to Defendant Lehman Brothers Special Financing Inc.'s Motion to Dismiss the Complaint (the "Motion"), and states as follows:

## PRELIMINARY STATEMENT

Contrary to the Motion, the Court has not previously decided all issues raised in the School Board's Complaint for Declaratory Judgment (the "Complaint"). Specifically, the Court has not decided whether the refusal of Lehman Brothers Special Financing Inc. ("LBSF") to perform the Swap Agreement during the post-petition period justifies the School Board's suspension of payments. The Court has also not decided any issue regarding the assumption and assignment of the Swap Agreement including, if the Swap Agreement can be and is assigned, whether the School Board is obligated to pay for post-petition services it never received. These issues comprise the three counts of the Complaint, and none of these issues was before the Court in *Metavante*. Consequently, LBSF's reliance on the Court's decision in *Metavante* as the basis to dismiss the Complaint fails.

The well-plead facts of the Complaint sufficiently state a claim upon which relief can be granted. The School Board alleges in the Complaint that LBSF has refused to perform the Swap Agreement prepetition and post-petition. Therefore, the School Board should not be compelled to continue its performance under the Swap Agreement or pay the demanded "Cure Amounts" on account of hedging services that LBSF did not provide.

Congress mandated cures of non-monetary defaults as a prerequisite to assumption of a debtor's executory contract and, in plain language, excepted from that requirement only *ipso facto* defaults relating to the debtor and not to a guarantor. As the default based on Holding's

insolvency is incurable, the Swap Agreement cannot be assumed or assigned absent the School Board's consent.

## STATEMENT OF FACTS

On December 3, 2003, the School Board and LBSF entered into an International Swap Dealers Association, Inc. Master Agreement (together with the Schedule thereto and the Guarantee and Credit Support Annex to such Schedule, the "Master Agreement"). (Compl. ¶ 13.) The parties executed a Confirmation (together with the Master Agreement, the "Swap Agreement"), setting forth the terms of their transaction on December 8, 2009. (*Id.* at ¶ 14.)

Under the Swap Agreement, LBSF agreed to make monthly payments to the School Board on the first business day of each month, and the School Board agreed to make semiannual payments to LBSF on the first business day of each March and September. (*See* Compl. Ex. A, Confirmation at 2.)[1]

The parties performed their respective obligations under the Swap Agreement from December 3, 2003, when the agreement was entered into, through and including September 1, 2008. (Compl. ¶ 24.) On September 1, 2008, the School Board made its semiannual scheduled payment due to LBSF of $1,656,061.68. (*Id.*)

On September 15, 2008, Lehman Brothers Holdings Inc. ("Holdings") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). (*Id.* at 27.) The filing of the voluntary petition constituted the entry for an order for relief under the Bankruptcy Code. (*Id.* citing 11 U.S.C. § 301.)

On October 1, 2008, prior to its own bankruptcy filing, LBSF failed to make its scheduled monthly payment of approximately $155,755.81 due to the School Board under

---

[1] Mechanically, LBSF would make 10 monthly payments to the School Board. For March and September, however, because there were payments owing in both directions, the parties would net the payment obligations for those months.

2

section 2(a)(i) of the Swap Agreement. (*Id.* at ¶ 29.)  From October 1, 2008 until the filing of the Complaint, LBSF had made none of the monthly payments due to the School Board under the Swap Agreement.  (*Id.* at ¶ 30.)

On or before October 3, 2008 (the date on which LBSF filed a petition for relief under the Bankruptcy Code), Holdings, the Specified Entity under the Swap Agreement, failed to pay its debts as they became due. (*Id.* at ¶ 25.)

On June 30, 2009, LBSF and Holdings delivered an Assignment Notice to the School Board demanding that the School Board make payments to LBSF totaling $1,127,996.31 (the "<u>Cure Amounts</u>") as a result of LBSF's attempt to assume and assign the Swap Agreement. (*Id.* at ¶ 37-38.)

## **ARGUMENT**

The Complaint alleges sufficient facts to state a claim upon which relief may be granted. Rule 8 of the Federal Rules of Civil Procedure, as incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citation omitted.)  A plaintiff need only allege in its complaint "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  When reviewing a motion to dismiss, a court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted).

### A. The Complaint Adequately Alleges That the School Board Should Not Be Compelled to Continue Performance When LBSF Refuses to Perform Its Post-Petition Obligations.

The School Board has alleged sufficient facts in the Complaint to support a claim that it is not obligated to make payments to LBSF under the Swap Agreement and that the Swap Agreement cannot be assumed because of incurable defaults relating to Holdings insolvency and bankruptcy filing. As stated in the Complaint, LBSF has failed to make any of its payments under the Swap Agreement from October 1, 2008 through the filing of the Complaint. (*See* Compl. at ¶ 30.) Although LBSF argues that the School Board cannot suspend payments post-petition, the Motion is devoid of any explanation as to how LBSF can refuse to perform its obligations under the Swap Agreement during the post-petition period yet require the School Board's continued performance, i.e., reap the benefits of the contract while avoiding all of its burdens.

Further, the cases cited by LBSF in the Motion confirm that LBSF must make the payments due to the School Board if it seeks to enforce the Swap Agreement. In each of the cases cited by LBSF, the debtor elected to perform the contract by making post-petition payments to the counterparty. In *McLean Industries, Inc. v. Medical Laboratory Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440 (Bankr. S.D.N.Y. 1989), the debtor sought specific performance of an option to purchase certain stock. *Id.* at 441-42. Importantly, the debtor sought to enforce the contract by tendering the cash required under the purchase option. *Id.* at 442. The debtor did not allege, as LBSF suggests in the Motion, that it was entitled to receive the benefits of the contract without also performing by paying the requisite purchase price.

Similarly, in *Data-Link Systems, Inc. v. Whitcomb & Keller Mortgage Co., Inc. (In re Whitcomb & Keller Mortgage Co., Inc.)*, 715 F.2d 375 (7th Cir. 1983), the debtor elected to continue performance of a contract by paying "in full" for the creditor's post-petition services.

4

*Id.* at 379 (Here it is undisputed that [the debtor] paid in full for all services rendered during the administration of the estate . . ."). Even in *Continental Energy Associates Limited Partnership v. Hazleton Fuel Management Co. (In re Cont'l Energy Assocs. Ltd. P'ship)*, 178 B.R. 405 (Bankr. M.D. Pa. 1995), the debtor agreed to pay cash post-petition to a creditor for the continuous post-petition supply of natural gas. *Id.* at 407. In none of the cases cited by LBSF did the debtor claim it was entitled to the benefits of a contract without providing some post-petition performance required by the contract. Here, it is LBSF's undisputed refusal to perform its post-petition obligations under the Swap Agreement that excuses the School Board's performance.

**B. The Default Under the Swap Agreement Relates to the Financial Condition of Holdings, Not LBSF, and is Not an Unenforceable Ipso Facto Provision.**

Instead of addressing its refusal to perform, LBSF relies principally on the Court's ruling in *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555(JMP), (Bankr. S.D.N.Y. Sept. 15, 2009) ("Metavante" or "Hr'g Tr.") to support the Motion. In that dispute, the Court held that Metavante could not rely on the bankruptcy filings or financial condition of LBSF or Holdings to suspend payments under its swap agreement to discontinue performance. (*See* Hr'g Tr., at 109:14-113:9.) According to the Court, the cross-default default provisions of the parties' agreement were unenforceable because, among other things, they relied upon the financial condition of bankruptcy debtors. (*Id.* at 112:3-18.)

To the extent this statement was essential to the Court's decision, the School Board respectfully submits that the prepetition financial condition of Holdings is not an unenforceable *ipso facto* clause in LBSF's bankruptcy case. Section 365(e) of the Bankruptcy Code prohibits so-called *ipso facto* clauses that modify the rights of the debtor after the commencement of a case. *See* 11 U.S.C. § 365(e)(1). As set forth in the Complaint, the rights of LBSF under the Swap Agreement were modified before LBSF commenced its bankruptcy case based on the financial condition of Holdings, not LBSF. (*See* Compl. ¶¶ 43-50.)

5

Under the Swap Agreement, the parties agreed that if Holdings could not pay its debts as they became due, then the School Board would not have to make any payment to LBSF. (*See* Swap Agreement § 5(vii)(2).) The financial condition of LBSF, the debtor, is irrelevant to the School Board's argument. LBSF's contention that any default based on the insolvency of a guarantor of the debtor is simply an *ipso facto* provision as to the debtor is too facile and, in this case, conflates the bankruptcy filings of LBSF and Holdings. Even assuming, *arguendo*, LBSF is correct that in providing in section 365(e)(1)(B) of the Bankruptcy Code that a contract may not be modified based on the commencement of "a case" under the Bankruptcy Code, that Congress meant any case (not just the debtor's case), consistency in interpreting section 365(e) would preclude applying section 365(e)(1)(A) to Holdings as that section speaks in plain language to the insolvency of "the debtor." Accordingly, the Event of Default relating to Holdings' financial condition is not an *ipso facto* clause under section 365(e)(1)(A) in LBSF's case.

Similarly, the same phraseology in creating *ipso facto* cure exceptions under section 365(b)(2) of the Bankruptcy Code to permit assumption of an executory contract compels the conclusion that the defaults based on Holdings' insolvency are not within the exceptions and are incurable. As a result, the Swap Agreement cannot be assumed or assigned under the Bankruptcy Code absent the School Board's consent.

### C. The School Board Should Not be Required to Pay for Hedging Services it did Not Receive.

Finally, even if the Court permits assumption and assignment of the Swap Agreement, the Motion fails to provide a basis to require the School Board, as the non-defaulting party, to make pay Cure Amounts demanded by LBSF for post-petition periods during which LBSF failed

to perform.[2] LBSF states in the Motion, "Plaintiff's argument that it would not be required to pay the net amounts owing under the Interest Rate Swap Agreement simply because LBSF allegedly has not performed under the contract ignores [] well-settled law." (Motion at 16.)

LBSF cites to cases in the Motion, however, that do not support its theory of "well-settled law." First, the cases cited concern the respective obligations of the parties before assumption or rejection, not the cure obligations required of a non-debtor party as a condition to assumption. *See U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 624-25 (8th Cir. 1994); *Cont'l Energy Assocs. Ltd. P'ship v. Hazleton Fuel Mgmt. Co. (In re Cont'l Energy Assocs. Ltd. P'ship)*, 178 B.R. 405, 408-09 (Bankr. M.D. Pa. 1995); *In re Monarch Capital Corp.*, 163 B.R. 899, 907 (Bankr. D. Mass. 1994); *In re Feyline Presents, Inc.*, 81 B.R. 623, 625-26 (Bankr. D. Colo. 1988). Second, the cases cited do not suggest that a non-debtor party is compelled to perform when the debtor elects to withhold all performance. In each case, the counterparty was compelled to perform only because the debtor continued to perform its post-petition obligations.

In *U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 624 (8th Cir. 1994), the debtor continued to perform under its executory contracts post-petition by hauling mail, and the United States Postal Service continued to make payments under those contracts on account of the debtor's performance. *Id*. at 624. When the debtor elected to cease performance, before the contracts were assumed or rejected, the court relied on *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984), to hold that the postal service could not enforce its contractual rights against the debtor post-petition. *Id.* at 625 (holding postal service did not have administrative claim based on debtor's

---

[2] LBSF's contention that the issues raised in the Complaint regarding assumption and assignment are not ripe is without merit. (*See* Motion at 14.) In determining whether an issue is ripe, "courts should focus on the practical likelihood that the contingencies will occur." *Associated Indem. Corp. v. Fairchild Indus., Inc., L.P.*, 961 F.2d 32, 35 (2d Cir. 1992) (quotation omitted). To the extent LBSF suggests it may never assume and assign the Swap Agreement, then it should reject the Swap Agreement. LBSF's motion to compel the School Board's performance is inconsistent with any contention that LBSF will not seek to retain this contract. Moreover, there can be little doubt that in this interest rate environment, the Swap Agreement has value to LBSF.

post-petition breach, but had only a rejection damages claim). Importantly, when the debtor in *Dewey* ceased performance, the counterparty was not compelled to continue to pay for services that the debtor refused to provide. *See id*.

In *In re Feyline Presents, Inc.*, 81 B.R. 623, 625 (Bankr. D. Colo. 1988), the debtor and Coca-Cola were parties to a prepetition contract pursuant to which Coca-Cola would pay to be the exclusive soft drink provider at the debtor's "Summer of Stars" music concert. *Id*. at 625. After the debtor filed for bankruptcy, but before it elected to assume or reject the contract, the debtor performed under the parties' contract by holding the concert. *Id*. Coca-Cola was accordingly required to pay the amounts due under the parties' agreement and could not unilaterally terminate the agreement. *Id.* at 626-27. The court expressly noted that in the interim period before assumption or rejection, the parties may continue to perform their respective roles, *id*. at 626, but nothing in *Feyline* suggests that a counterparty must perform when the debtor refuses to perform its obligations. It would lead to an absurd result to require Coca-Cola to continue making payments for a concert that the debtor refused to hold.

While the debtor cannot be forced to perform post-petition, if the debtor wishes to compel a counterparty's performance, then the debtor must likewise perform its post-petition obligations. *See In re Monarch Capital Corp.*, 163 B.R. 899, 907 (Bankr. D. Mass. 1994) (holding that the debtor was obligated to perform under the parties' contract by reimbursing creditor's expenses if it required creditor's continued performance). The court in *Monarch* explicitly stated that the "bankruptcy estate . . . can require the nondebtor to continue performance, so long as the estate performs." *Id*. at 907. Here, LBSF's refusal to perform the Swap Agreement has deprived the School Board of the monthly cash payments it bargained for and which it used to pay interest on the bond obligations for which the Swap Agreement served as an interest hedge. The School Board, having had to scramble to find money in its fixed

8

budget to make those bond payments, obtains no benefit from LBSF's "cure" of those obligations at this point. Accordingly, the School Board should not be compelled to make the demanded Cure Amounts.

The argument that the School Board should be compelled to make the Cure Amounts is inconsistent with section 365 of the Bankruptcy Code. "Section 365 was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Superior Toy & Mfg Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (same). The School Board will not receive the benefit of its bargain if it must pay the Cure Amounts to LBSF when LBSF has not provided the hedging benefit that the School Board bargained for under the Swap Agreement.

The purpose of the Swap Agreement is to provide the School Board with a hedge against the variable interest rate risk on a bond issuance. (*See* Compl. ¶ 12.) To that end, the Swap Agreement requires LBSF to timely pay a floating interest rate on a monthly basis, which, in fact, as LBSF knew, the School Board used to make the monthly bond interest payments. When LBSF fails to make the monthly payment, the purpose of the contract is entirely defeated. The School Board has not received and will not receive the benefit of its bargain if it is required to pay the Cure Amounts for the period during which LBSF has refused to perform the Swap Agreement.

Indeed, LBSF cites no authority for imposing a cure obligation on the School Board, the non-defaulting party under the ISDA Master Agreement.

## CONCLUSION

For all the foregoing reasons, the School Board respectfully requests that the Court deny the Motion and grant such further relief as is just and proper.

Dated: November 3, 2009
      New York, New York

By:   /s/   *Jeff J. Friedman*

Jeff J. Friedman
Merritt A. Pardini
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for the Board of Education of the City of Chicago