WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | :  Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | :  08-13555 (JMP) |
| Debtors. | :  (Jointly Administered) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO | : |
| Plaintiff, | : |
| -against- | : |
| LEHMAN BROTHERS SPECIAL FINANCING INC. | : |
| Defendant. | :  Adversary Proceeding
:  No.: 09-01455 (JMP) |

**REPLY IN SUPPORT OF LBSF'S MOTION TO DISMISS THE COMPLAINT**

Lehman Brothers Special Financing Inc. ("LBSF"), as debtor and debtor in possession (together with Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this Reply in Support of LBSF's Motion to Dismiss the Complaint of the Board of Education of the City of Chicago ("Chicago Board") and respectfully states:

# PRELIMINARY STATEMENT

1. This adversary proceeding raises issues that have already been largely resolved by this Court in its Metavante ruling. Chicago Board has an executory swap contract with LBSF that is significantly in the money for LBSF. Chicago Board has refused to perform under this swap agreement during LBSF's bankruptcy. The reasons for this non-performance are not unfamiliar. Chicago Board contends that the bankruptcies or the financial condition of LBSF and its affiliate, LBHI, constitute an Event of Default under the contract allowing Chicago Board to suspend performance.

2. Chicago Board is attempting to reap a windfall as a result of the bankruptcies of LBSF and LBHI. The Chicago Board swap agreement is extremely valuable to LBSF's estate, yet Chicago Board is attempting to avoid making contractually-obligated payments to LBSF.

3. Counts I and II of the Complaint should be dismissed for largely the same grounds as this Court's Metavante ruling. These counts seek a declaratory judgment that Chicago Board may (1) withhold performance under the contract and (2) avoid the assumption and assignment of the contract based on the bankruptcies and pre-bankruptcy financial conditions of LBSF and LBHI. As this Court recognized in Metavante, however, the ISDA Master Agreement's[1] *ipso facto* provisions are unenforceable against a debtor such as LBSF. Indeed, Chicago Board does not dispute that it would be prohibited from enforcing a provision that excused its performance based on the bankruptcy filing of LBHI. Instead, Chicago Board argues that it is excused from performing based on the alleged insolvency of LBHI before its bankruptcy. But this argument, too, is prohibited by the Bankruptcy Code. First, Chicago Board

---

[1] Capitalized terms not defined herein shall have the same meaning as used in the motion to dismiss.

does not dispute that LBHI's guarantee was necessary only because of concerns regarding LBSF's financial condition. And, Chicago Board could not have withheld performance based on the financial condition of LBSF. Thus, Chicago Board presents no reason why the Court should treat a contractual provision that is only necessary because of the financial condition of LBSF any differently than one based on the financial condition of LBSF itself.

4. Second, Chicago Board does not dispute that it would not have been permitted to withhold performance based on the commencement of LBHI's bankruptcy case. (*See* Resp. at 6.) Thus, a fortiori, Chicago Board should not permitted to withhold performance based on the alleged pre-bankruptcy financial condition of LBHI, which ultimately resulted in LBHI's bankruptcy.

5. Finally, Count III should be dismissed because it is contrary to existing law—Chicago Board cannot refuse to perform regardless of whether or not LBSF performs. Chicago Board seeks to justify its refusal to honor its obligations by claiming that LBSF has failed to make monthly payments under the Interest Rate Swap Agreement while LBSF has been in bankruptcy. The law is clear, however, that Chicago Board must perform during the "gap period" while LBSF is determining whether to assume or reject the contract regardless of whether LBSF breached the Interest Rate Swap Agreement before or after it filed for bankruptcy. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984). At most, Chicago Board is entitled to the reasonable value of the services it provides *at the time or after it provides them*, which it will receive through the netting provisions of the Interest Rate Swap Agreement. Such netting provisions would allow Chicago Board to subtract any amounts due from LBSF's monthly payments from Chicago Board's much larger semi-annual payments to LBSF. Instead, Chicago Board improperly seeks to require LBSF to perform first (by making monthly payments which

expose the estate to significant counterparty risk with no assurance of Chicago Board's performance) and then only after performance by LBSF would Chicago Board supposedly agree to make payments. But LBSF is at most required to pay for services at the time or after Chicago Board's performance—and this can be done in full under the netting provisions of the Interest Rate Swap Agreement. Moreover, Chicago Board's argument that LBSF has not performed under the Interest Rate Swap Agreement is a fiction because Chicago Board does—and for the foreseeable future will—owe LBSF significant net sums under the Interest Rate Swap Agreement.

6. In addition, Chicago Board's complaints that it somehow lost the benefit of LBSF's monthly payments (which are dwarfed by Chicago Board's semi-annual payments to LBSF) are belied by Chicago Board's own conduct. Section 560 of the Bankruptcy Code permitted Chicago Board to terminate the Interest Rate Swap Agreement, rehedge, and pay LBSF a termination fee. Had it done so, Chicago Board would have been in the same economic position as if LBSF had not filed for bankruptcy. But Chicago Board decided to not timely exercise its rights that are carefully preserved by the Bankruptcy Code and now has waived its ability to do so.

7. Indeed, at some point after LBSF's bankruptcy filing, Chicago Board was presented with an opportunity to consent to an assignment of the Interest Rate Swap Agreement to another counterparty. Such an assignment also would have put Chicago Board from that point forward in the same position as if LBSF had not filed for bankruptcy. But Chicago Board refused this request, insisting that it be permitted to retain amounts it already owed LBSF under the Interest Rate Swap Agreement. Thus, rather than fulfilling its obligations under the Interest Rate Swap Agreement, terminating the Interest Rate Swap Agreement upon LBSF's bankruptcy,

or agreeing to an assignment, Chicago Board has decided to sit on its hands, and now asks this Court to bless its conduct. This Court should not reward this behavior and, instead, should dismiss the Complaint.

## ARGUMENT AND AUTHORITIES

A. *The Court Should Reject Chicago Board's Attempt to Avoid Performance Based on the Pre-Bankruptcy Financial Condition of LBHI*.

8. Chicago Board argues—despite the Court's holding with respect to the motion to compel Metavante Corporation to perform its obligations under a nearly identical contract—that it is entitled to withhold performance based on the bankruptcies or prepetition financial conditions of LBSF and LBHI. (*See* Resp. at 5-6.) In essence, Chicago Board, like Metavante, argues that the prepetition financial condition of LBHI gives it a free pass to permanently avoid performing under its swap agreement with LBSF. This argument is contrary to the purposes of the Bankruptcy Code, and Congress's intention in crafting narrow safe harbors to permit termination of swap agreements, and should be rejected.

9. Chicago Board first argues that "the rights of LBSF were modified before LBSF commenced its bankruptcy case based on the financial condition of LBHI," thus suggesting that it permanently is excused from performing simply because LBHI was insolvent at some point in the past. (*See* Resp. at 5.) But this is the same argument that Metavante raised, and the Court rejected, in connection with LBHI's alleged default with respect to "specified indebtedness." (*See* Tr. from Sept. 15, 2009 hearing at 112:13-18 ("Additionally, the argument that LBSF or LBHI may have defaulted under other specified indebtedness, as that term is defined in the Interest Rate Swap Agreement, relies upon the financial condition of bankruptcy debtors to withhold performance. That is also unenforceable as an *ipso facto* clause that may not be enforced under the Bankruptcy Code Section 365(e)(1)(A).").) The Court similarly should

reject Chicago Board's argument because it would permit Chicago Board to withhold performance based solely on an *ipso facto* clause.

10. Chicago Board next argues that it is relying upon the financial condition of LBHI, and not LBSF, and thus, that 11 U.S.C. § 365(e)(1)(A) does not apply because it is premised on the "the insolvency or financial condition of the debtor." However, as stated in the Motion, since LBHI is a guarantor under the Interest Rate Swap Agreement only because Chicago Board was concerned about the financial condition of *LBSF*, a clause premised on the financial condition of the guarantor (LBHI) is just as much an *ipso facto* provision as if it were premised on the financial condition of LBSF. Chicago Board offers no response to this argument, other than to claim that it is "too facile." (Resp. at 6.)

11. Moreover, Chicago Board does not dispute that a contractual provision would be unenforceable if it were to permit LBSF's counterparty to avoid performing based on the commencement of LBHI's bankruptcy case. (*See* Resp. at 6.) Instead, Chicago Board claims that it is not withholding performance based on the commencement of LBHI's case, but rather only based on the alleged insolvency of LBHI before its bankruptcy. (*See id.*) Chicago Board ignores, however, that the Interest Rate Swap Agreement requires that the event of default both occur and be continuing. Because the alleged insolvency of LBHI resulted in the "commencement of a case," Chicago Board cannot credibly claim that it is withholding performance based on the insolvency of LBHI and not based on LBHI's bankruptcy. As Judge Gropper recently stated in *In re Probulk, Inc.*, when considering a contractual provision that purported to terminate a contract automatically upon the passage of "a resolution for voluntary winding up" which occurred before the actual commencement of the case, "[t]he Bankruptcy Code is not so easily evaded." 407 B.R. 56, 60 (Bankr. S.D.N.Y. 2009).

12. This Court should reject Chicago Board's attempts to avoid the *ipso facto* prohibitions of the Bankruptcy Code, and should dismiss Chicago Board's Complaint.

**B.    *The Court Should Reject Chicago Board's Attempt to Avoid Performance Based on LBSF's Failure to Strictly Perform Under the Terms of the Interest Rate Swap Agreement*.**

13. Next, Chicago Board attempts to avoid performance under the Interest Rate Swap Agreement by claiming that its performance is "excus[ed]" by "LBSF's undisputed refusal to perform its postpetition obligations under the Swap Agreement." (Resp. at 5.) However, Chicago Board fails to recognize that it will receive LBSF's exact monetary performance the moment that Chicago Board performs the contract because the Interest Rate Swap Agreement permits Chicago Board to net-out amounts owed by LBSF. Thus, Chicago Board is using a few of LBSF's missed monthly payments—which are dwarfed by the amounts owing by Chicago Board—as a guise to refuse to pay amounts due to LBSF under the contract. Bankruptcy law, however, does not allow a debtor's counterparties to refuse to perform under such circumstances.

14. A debtor need not strictly adhere to the terms of the contract in order to require a counterparty to perform. Rather, a counterparty must perform regardless of the debtor's performance, and, in return, the counterparty is entitled to receive—at best—the reasonable value of the services it provides. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which depending on the circumstances of a particular contact, *may be* what is specified in the contract.") (internal citation omitted) (emphasis added); *United States v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 622 (8th Cir. 1994) ("USPS argues that, when a debtor 'forces the non-debtor party to continue to perform,

both parties are bound by the terms of the contract,' including in this case the contractual recoupment provisions. As *Bildisco* makes clear, that is not the law."). Here, the moment that Chicago Board performs under the Interest Rate Swap Agreement, it will receive the value of its performance by netting out any amounts owed by LBSF.

15. Chicago Board cites no cases that stand for the proposition that a debtor is required to fully perform a contract *before* its counterparty is required to perform. (*See* Resp. at 4.) None of the cases cited by Chicago Board requires that the debtor pay for services before receiving them; instead, these cases merely require that the non-debtor be reasonably compensated therefor. In *Continental Energy Associates Ltd. Partnership v. Hazleton Fuel Management (In re Continental Energy Associates)*, the court required the non-debtor supplier to continue providing natural gas to the debtor and the debtor continued to pay under the terms of the contract. 178 B.R. 405, 408-09 (Bankr. M.D. Pa. 1995). In so doing, the court expressly rejected the idea that it was "bound by terms of the contract" in determining the price for the supplied gas, reserving for itself "the right to reconsider the reasonable value of gas supplied under the contract." *Id.* (stating "there is ample authority for the proposition that, pending assumption or rejection, the Debtor may elect to enforce the contract thereby being required to pay for the reasonable value of the material or services supplied"). *Continental* does not support the proposition that LBSF already must have performed under the contract before Chicago Board will be required to pay LBSF the amounts owed, when those amounts indisputably are much larger than the amounts owing by LBSF.

16. Similarly, in *Data-Link Systems, Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Keller Mortgage Co.)*, the court did not require that the non-debtor supplier receive the full payment under the contract, although the debtor tendered that amount. Instead,

the court required only that the supplier suffer "no harm nor prejudice through the continued utilization of its . . . services." 715 F.2d 375, 379 (7th Cir. 1983).

17. Chicago Board's citation to *In re Monarch Capital Corp.*, 163 B.R. 899 (Bankr. D. Mass. 1994), for the proposition that a debtor can require performance of an executory contract only if the estate performs, is misplaced and taken out of context. The *Monarch* court was not faced with the issue now before the Court: whether a counterparty can demand full performance of the contract by the debtor as a condition of the counterparty's performance. Instead, *Monarch* addressed whether a party who performs postpetition can obtain the fair value of those services as a postpetition priority claim. *See In re Monarch Capital Corp.*, 163 B.R. at 907. In fact, the *Monarch* court's decision suggests that Chicago Board's reading is wrong. In *Monarch*, a financial advisor to a debtor continued to provide services postpetition even though the debtor did not actually pay amounts owed to the financial advisor for services due under the contract. 163 B.R. at 908. The court ultimately determined that the financial advisor was entitled to compensation for those services—as a postpetition administrative expense claim—and suggested that the advisor would not be entitled to the full contract amounts (*i.e.*, full performance by the debtor) but something less to be determined at trial. *See id.* at 909.

18. Similarly, *In re McLean Industries, Inc. v. Medical Laboratory Automation, Inc. (In re McLean Industries, Inc.)* – which held that a debtor can compel performance on an executory contract before assumption – does not support Chicago Board's position. The *McLean* court did not discuss what payment the debtor must tender, and Chicago Board's suggestion to the contrary is inaccurate. 96 B.R. 440, 447-450 (Bankr. S.D.N.Y. 1989).

19. In sum, Chicago Board has provided no authority to support its contention that LBSF must fully perform before Chicago Board performs its obligations under the contract.

To the contrary, all of the cases relied on by Chicago Board merely state that the non-debtor would be entitled to the reasonable value of the benefit it confers as a postpetition claim. In this case, Chicago Board will do better than that as it will receive such value the moment that it performs under the contract as it will be entitled to net out the amounts owing by LBSF, and thus, will receive the exact performance contemplated by the Interest Rate Swap Agreement. It will not have to wait for the allowance and payment of a postpetition claim.

C.  *Chicago Board Should Be Required to Tender the Cure Amounts If the Interest Rate Swap Agreement Is Assumed and Assigned.*

20.  Chicago Board also argues that even if the Interest Rate Swap Agreement could be assumed and assigned, that it should not be required to pay for amounts that are currently owing by it under the Interest Rate Swap Agreement. (*See* Resp. at 6-9.) Again, this argument would unacceptably permit Chicago Board to withhold performance from LBSF.

21.  These arguments fail for the same reasons discussed above with respect to Chicago Board's attempts to withhold performance under the Interest Rate Swap Agreement. Chicago Board is substantially out of the money, and will be for the foreseeable future. As a result, the netting function under the Interest Rate Swap Agreement ensures that Chicago Board will receive the value of the benefit conferred on LBSF's estate by the time that Chicago Board's obligations are due. Chicago Board relies predominantly on cases cited in LBSF's motion, and relied upon by the Court in Metavante, which hold that a counterparty is required to perform under a contract while the debtor is determining whether to assume or reject the contract. (*See generally* Resp. at 7-8.) These cases do not stand for the proposition that Chicago Board can withhold all of the amounts already owing to LBSF at the time that LBSF assigns the contract simply because LBSF missed a few monthly payments that were dwarfed by the amounts owing

by Chicago Board, and which LBSF would cure by allowing Chicago Board to setoff against amounts it owes to the estate.

22.  Moreover, Chicago Board's contention that section 365 of the Bankruptcy Code permits it to withhold these past due amounts upon an assignment of the contract completely misconstrues the purpose of section 365. The amounts owing by Chicago Board already net out all amounts owing by LBSF. Thus, if Chicago Board pays LBSF all amounts owed to LBSF when the contract is assigned, Chicago Board will ensure that both parties are placed in the same position as if the contract had been performed. Chicago Board's argument to the contrary would result in an unjustifiable windfall to Chicago Board and should be rejected.

### D.     *The Court Should Dismiss Counts II and III Because They Are Not Ripe*.

23.  Finally, Counts II and III of the Complaint seek declarations regarding a potential assumption and assignment of the Interest Rate Swap Agreement. Chicago Board does not dispute, however, that there is no pending motion to assume and assign the Interest Rate Swap Agreement and that the assignment notice delivered to Chicago Board on June 30, 2009 is no longer valid. (*See generally* Resp. at 7 n.2.) Instead, Chicago Board argues that the Court "should focus on the practical likelihood that the contingencies will occur." (*Id.*) In essence, Chicago Board argues that the Court should anticipate that LBSF will want to assume and assign the contract in the future. (*See id.*) This argument misses the point. The Bankruptcy Code provides Chicago Board ample opportunity to challenge a motion to assume and assign the Interest Rate Swap Agreement, and Chicago Board's objections to any such assumption and assignment should be raised upon the filing of such a motion, rather than through a premature declaratory judgment action. *See In re Finnie*, No. 05-16373, 2007 WL 1574294, at *7 (Bankr. S.D.N.Y. May 29, 2007) (dismissing declaratory judgment claim based on contingent events where there is no harm to plaintiff). A ruling that this dispute is ripe would create the possibility

for administrative chaos by inviting every counterparty to an executory contract to file early motions to challenge LBSF's ability to assume and assign a contract.

## CONCLUSION AND REQUESTED RELIEF

LBSF respectfully requests that that the Court enter an order granting LBSF's motion to dismiss the complaint and to grant further relief as is just and proper.

Dated: November 18, 2009
       New York, New York

                              /s/ Richard W. Slack_____
                              Lori R. Fife
                              Richard W. Slack
                              Robert J. Lemons

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153-0119
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtor and
                              Debtor In Possession